[No. 1014-2.    Division Two.    July 11, 1974.]

ALEX J. FLEURY et al., *Respondents,* v. ALLEN A. BOWDEN et al., *Appellants.*

*Russell A. Austin, Jr.,* and *Rutherford, Kargianis & Austin,* for appellants.

*Wayne B. Knight* and *Stouffer & Knight,* for respondents.

Pearson, C.J.—Defendants Allen A. Bowden and W & A Development Company, Inc., appeal from an order of summary judgment which forfeited a real estate contract on a 115-acre tract of land and foreclosed a mortgage on three other lots, all located in Mason County. The order provided a schedule of payments by which defendants could cure the default. Admittedly, the schedule was not met.

Two main questions are presented on appeal. (1) Did an affidavit of defendant Bowden establish any material issues of fact? (2) Did the forfeiture and foreclosure remedies result in a double recovery in violation of the rule of *Blenz v. Fogle,* 127 Wash. 224, 220 P. 790 (1923)?

We conclude that the factual issues raised are not material to the relief sought by plaintiffs. We also conclude that the rule of *Blenz v. Fogle* does not apply to the facts of this case and that judgment should be affirmed.

Beside the pleadings and the various contract and mortgage documents, the case was submitted to the court on two affidavits by plaintiff's attorney and one affidavit by defendant Allen A. Bowden. Bowden, also an attorney, had negotiated the transactions with plaintiff's attorney and all affidavits were made on personal knowledge.

These items of evidence establish without dispute the following occurrences. On July 15, 1970, plaintiffs sold the 115-acre tract to defendants on a real estate contract for a gross purchase price of $200,000. The contract provided for a down payment of $8,000. The balance, including 8 percent interest on diminishing balances, was to be paid in annual installments which started at $10,000 commencing on July 15, 1971, and were increased by $2,000 each succeeding year until a maximum of $20,000 was reached. Thereafter the annual payments continued at $20,000 until the full price with interest was paid in full.

The contract allowed defendants to develop the tract and sell off portions, pursuant to the development. To afford plaintiff further security as the lots were sold, the contract

required defendants to place the individual real estate contracts in escrow by the end of the first year in sufficient numbers to protect plaintiff's equity in the property. In all other respects the contract was in standard form with a "time is of the essence" provision and the forfeiture remedy in the event of default.

It is undisputed that at the end of the first year (July 15, 1971) defendants had sold numerous lots, the contracts for which were not placed in escrow as agreed. At this time plaintiff's equity was approximately $108,000.

Facing a prospective forfeiture because of this default, defendants on September 10, 1971, executed a promissory note in plaintiff's favor for $108,842.78. The note called for monthly payments of $1,000 and bore interest at 8 percent commencing July 15, 1971. The note further required defendants to assign to plaintiff every fifth lot which they might thereafter sell in the area of the development. These contract assignments were in addition to the monthly payments. At the end of 1 year a minimum of $12,000 in real estate contracts was to be assigned to plaintiff and a like amount at the end of each succeeding year.

The note was secured by a real estate mortgage on additional property owned by defendants in the same general area. The mortgage provided for an acceleration of payments in the event of default. A contemporaneous agreement was also signed which recited *inter alia* that the note and mortgage were to provide an alternate method of performing the original real estate contract. It also provided:

> It is hereby specifically understood that this said note and mortgage is additional security for the performance on the Real Estate Contract and said note and mortgage is not to be considered as a payment as such. The parties specifically understand that default upon the note and mortgage is a default on the Real Estate Contract and both may be acted upon as the instrument and laws permit.

It is also undisputed that at the time the present action was commenced in September 1972, the obligations under

the note and mortgage were substantially in default. By this time approximately 45 acres of the 115-acre tract had been developed and sold. Defendants were in arrears on the monthly payments required by the promissory note, had failed to assign the contracts on lots sold as required by the agreement and note, and had failed to assign the minimum of $12,000 in value of contracts.

In their complaint, plaintiffs sought forfeiture of the original real estate contract and foreclosure of the mortgage on three lots of defendants which had been encumbered in September 1971 as additional security. No deficiency judgment was sought.

Defendant's answer admitted execution of the various instruments, admitted that they were in default, but sought to defend on the grounds that the breach related only to collateral security and would not support a forfeiture. Furthermore defendants sought to reform the agreement entered into in September of 1971, claiming that the three instruments "did not correctly reflect the understanding of the parties" and that foreclosure was not intended. This allegation was again asserted in the affidavit of Bowden.

██ It is our view that Bowden's affidavit was insufficient in law to support reformation. Defendants concede that forbearance from forfeiture after the first breach of the original real estate contract was sufficient consideration for the subsequent agreement, note and mortgage providing for additional security. The new transaction is, therefore, valid and enforceable. *Snyder v. Roberts*, 45 Wn.2d 865, 278 P.2d 348, 52 A.L.R.2d 631 (1955). The assertion by Bowden that the parties intended a different agreement than the one expressed in the instruments is insufficient to support reformation. Furthermore, a unilateral mistake will not support reformation. Restatement of Contracts §§ 503, 504 (1932); *see Bergstrom v. Olson*, 39 Wn.2d 536, 236 P.2d 1052 (1951); *Tenco, Inc. v. Manning*, 59 Wn.2d 479, 368 P.2d 372 (1962).

██ The clearly expressed intention is shown by the three instruments to allow forfeiture of the original con-

tract and foreclosure of the subsequent mortgage in the event of default. Other assertions made in Bowden's affidavit relate to potential encumbrances or claims on the property subject to foreclosure which various third persons may assert in the future. These assertions are not material to the present dispute. To avoid summary judgment, a genuine issue of *material* fact must be established. CR 56. We conclude that the trial court was warranted in granting summary judgment in light of the record before it.

The principal legal issue presented is whether or not the two remedies allowed in the judgment cause a double recovery which is prohibited, according to the rule established in *Blenz v. Fogle, supra; see Chavelle v. Duclos,* 154 Wash. 492, 282 P. 843 (1929); *Geranios v. Annex Invs., Inc.,* 45 Wn.2d 233, 273 P.2d 793 (1954).

In *Blenz v. Fogle,* the seller under a land contract was given a promissory note which the Supreme Court determined was payment for a preexisting debt incurred by reason of the purchaser's default in payments on the land contract. The seller later sought to forfeit the land contract and foreclose on chattel mortgages which had been given as security for the promissory note. In ruling that the two remedies were inconsistent and not jointly actionable, the court stated at page 231:

> [W]e have here a case where the vendor is claiming forfeiture of the rights of his vendee in the property and in payments made on the agreed sale price, and at the same time seeking to recover a portion of the sale price remaining unpaid. This, of course, a vendor cannot do. In other words, he cannot reclaim the property under a forfeiture clause in the sale contract, such as is. here drawn in question, and at the same time recover any portion of the unpaid sale price.

At page 232, the court further stated:

> It seems to be the settled law of this state, in harmony with the views expressed by other courts of this country, that the giving of a negotiable promissory note for a preexisting debt owing by the payor to the payee does not discharge the preexisting debt and create a new debt

independent thereof, as between the original parties, *in the absence of an agreement between them to that effect,* and that the burden of showing such an agreement rests upon the one asserting it. [Citing cases.]

. . .

Even an unpaid judgment rendered upon an installment of the purchase price of such a contract, is held to be satisfied by an election of forfeiture by the vendor, because of subsequent defaults, . . .

(Italics ours.) We are satisfied that the rules stated by the Supreme Court in *Blenz* do not apply to this case.

In the first place, the land contract here in question was one where the security provided by the remedy of forfeiture diminished as the defendant disposed of the lots. If defendant refused, as he admittedly did, to assign resale contracts to protect plaintiff's equity, forfeiture became an increasingly ineffective remedy as portions of the land were sold. With 45 of 115 acres of the land already sold, and very little consideration having passed to plaintiff, the possibility of double recovery is unlikely where both the forfeiture and foreclosure remedies are allowed.

Secondly, we do not have here a promissory note given to discharge a preexisting debt, as in *Blenz.* In the case at bench, a new consideration passed, as we have noted, and a new alternative method of fulfilling the contract arose. *See McHugh v. Rosaia,* 184 Wash. 463, 51 P.2d 616 (1935): That method, to offer adequate security for a diminishing tract of land, provided for the two remedies, both of which were necessary to protect plaintiff. And we have also noted that plaintiff does not seek a deficiency judgment in connection with the suit on the note, which might result in a double recovery.

Lastly, the parties in this case have specifically agreed to both remedies in the event of a second default. Such was not the case in *Blenz.*

Judgment affirmed.

ARMSTRONG and PETRIE, JJ., concur.