[No. 10183–5–III.   Division Three.   January 8, 1991.]

*In the Matter of the Marriage of* MARILYN PATRICIA
MANRY, *Appellant, and* CHARLES W. MANRY, SR.,
*Respondent.*

*Byron P. Shaw* and *Stancik & Shaw*, for appellant.

*Patrick T. Roach* and *Campbell, Johnston & Roach*, for respondent.

SHIELDS, J.—Marilyn and Charles Manry were married on September 3, 1960, and separated on November 7, 1986. Their marriage was dissolved in 1987. Their assets and liabilities were valued as of the date of separation, and divided between them. Mrs. Manry appeals; we affirm.

The issue is whether the court abused its discretion by (1) awarding to Mr. Manry an increase in the value of his retirement benefits, which accrued after separation but prior to trial, and (2) holding Mrs. Manry responsible for payment of a Citibank Visa debt incurred during the marriage but without Mr. Manry's knowledge.

I

THE RETIREMENT PLAN

When they separated, the parties were comparably employed; Mrs. Manry was a manager with Boeing Computer Services and Mr. Manry was an engineer with Rockwell/Hanford Operations, a Department of Energy (DOE) contractor in the Tri–Cities area. Prior to that, Mr. Manry had worked for a succession of companies on DOE contracts. With each change of employer, his accrued rights under retirement plans were "rolled over"[1] into the retirement plan of the new employer. On the date of separation,

---

[1] *See* 26 U.S.C. § 402(a)(5).

Mr. Manry had vested monthly retirement benefits of $953 maturing at age 65, based on 21 years of service.

About 7 months after separation, Westinghouse took over the DOE contract. Mr. Manry continued working at Hanford, but for Westinghouse. After June 29, 1987, the Rockwell retirement plan was rolled over into the Westinghouse plan, with full retirement benefits maturing at age 62 instead of 65. Another change was expected, effective January 1, 1988, which would reduce the maturity date to age 60.

Mrs. Manry contends Mr. Manry's retirement benefits are community property which fortuitously increased in value between the date of separation and the time of trial. She asserts the court erred in characterizing the increased value as separate, rather than community, property. She does not challenge the court's valuation of the other community assets at the date of separation.

█ The court has broad discretion in the disposition of property in dissolution actions, and that disposition will not be disturbed absent a manifest abuse of discretion. *Lucker v. Lucker*, 71 Wn.2d 165, 167, 426 P.2d 981 (1967). Both Mr. and Mrs. Manry's accountants used the date of separation for calculating the value of Mrs. Manry's retirement benefits and Mr. Manry's military retirement benefits. However, Mrs. Manry's accountant used the date of trial rather than the date of separation in determining the value of Mr. Manry's Westinghouse/Hanford retirement plan, while Mr. Manry's accountant used the date of separation to value the Rockwell/Hanford plan.[2] The court accepted the Rockwell/Hanford plan valuation in making its disposition.

---

[2]Using the deferral rate of 7.75 percent accepted by the court, the Rockwell/ Hanford retirement plan maturing at age 65 was valued at $26,132.39 as of the date of separation. The Westinghouse/Hanford plan maturing at age 60 was valued at $74,801 as of the date of trial with no allowance made for Mr. Manry's interest accumulated during the year after the parties separated. However, at the time of trial the voluntary early retirement age of 60 was not effective. Maturing at age 62, the plan's value was $59,470.

The Rockwell/Hanford plan was a defined benefit plan, fully vested but unmatured. Since it was a private plan established by an employer engaged in commerce or in an industry affecting commerce, it was subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. Establishing present value of Mr. Manry's benefits requires calculating how much cash in a lump sum would be required to provide an annuity of a specific amount for his expected remaining life after retirement. Valuation is necessarily imprecise because benefits generally rise with the employee's income, and a range of values is possible depending upon which actuarial methods, deferral rates and rounding figures are used.[3]

■ There is support for the court's decision to accept the Rockwell/Hanford valuation. In *In re Marriage of Donovan*, 25 Wn. App. 691, 694, 612 P.2d 387 (1980), the court stated:

> The husband argues that RCW 26.16.010 and 26.16.140 each requires that the gross retirement benefits accruing prior to marriage and subsequent to separation be designated as his separate property. We agree.

Here, the Westinghouse/Hanford plan did not exist at the date of separation. The court properly characterized the Rockwell/Hanford plan as community property and awarded it to Mr. Manry as his separate property. Mrs. Manry was awarded credit for one–half of its value. It was then proper for the court to confirm to Mr. Manry as his separate property all retirement benefits which accrued after separation.

---

[3]The values given just by Mrs. Manry's accountant for the Westinghouse/Hanford plan ranged from a high figure of $93,167 to a low figure of $59,470.

Valuation problems may be avoided. State courts are now authorized to order a division of the interest in retirement benefits subject to ERISA in dissolution proceedings pursuant to a "qualified domestic relations order [QDRO]" under the Retirement Equity Act of 1984 (REA) which amended ERISA. Pub. L. No. 98–397, 98 Stat. 1433 (1984); 29 U.S.C. § 1056(d)(3)(A). *See* 1 Washington State Bar Ass'n, *Family Law Deskbook* ch. 41 (1989) for a discussion of QDRO's.

## II
### The Citibank Visa Account

For 3 years prior to their separation, the Manrys maintained separate bank accounts. Mrs. Manry opened and used the Citibank Visa account without Mr. Manry's knowledge. At the time of separation, there was an outstanding balance of $5,229. After separation, Mrs. Manry paid $329 on the account. The balance owed at the time of trial was $4,900. Prior to trial, Mr. Manry requested an accounting of purchases made with the card, but Mrs. Manry refused to provide one.

Mrs. Manry contends the Citibank Visa debt incurred during the marriage is presumed to be a community debt. *Oil Heat Co. of Port Angeles, Inc. v. Sweeney,* 26 Wn. App. 351, 613 P.2d 169 (1980). She argues Mr. Manry failed to overcome this presumption by clear and convincing evidence. *Beyers v. Moore,* 45 Wn.2d 68, 272 P.2d 626 (1954).

Mrs. Manry is correct that a debt incurred by one spouse during marriage is a community liability if the transaction was intended to confer a community benefit. *Malotte v. Gorton,* 75 Wn.2d 306, 309, 450 P.2d 820 (1969); *see Colorado Nat'l Bank v. Merlino,* 35 Wn. App. 610, 668 P.2d 1304, *review denied,* 100 Wn.2d 1032 (1983).

Mrs. Manry testified the Citibank Visa purchases were for a community benefit, but she refused to supply an accounting or copies of billing statements to support that conclusory claim. It was uniquely within her power to verify the credit line was established and used for a community benefit; Mr. Manry could not get information on the account because his name was not on it. Mrs. Manry's refusal to produce information deprived Mr. Manry of the only evidence available to prove his claim the expenditures were not for a community benefit, preventing him from meeting his burden of proof. Holding her responsible for the debt is not an abuse of discretion under these circumstances.

The trial court's considerable discretion is making a property division will not be disturbed on appeal absent a manifest

abuse of that discretion. A manifest abuse of discretion is a decision manifestly unreasonable or exercised on untenable grounds or for untenable reasons.

(Citation omitted.) *In re Marriage of Tower,* 55 Wn. App. 697, 700, 780 P.2d 863 (1989), *review denied,* 114 Wn.2d 1002 (1990). Mrs. Manry has not shown the trial court's distribution of the couple's property and liabilities constitutes a manifest abuse of discretion.

Affirmed.

GREEN, C.J., and THOMPSON, J., concur.