[No. 64153-6. En Banc.]
Argued February 2, 1997. Decided June 5, 1997.

*In the Matter of the Marriage of* FRANCES E. SCHWEITZER, *Respondent*, and FABIAN S. SCHWEITZER, *Petitioner*.

320

*Coe, Nordwall & Liebman*, by *Harold B. Coe*; and *Janet L. Comin*, for petitioner.
*Pierce Law Offices*, by *Rodney G. Pierce*, for respondent.

DOLLIVER, J. — In this action for dissolution of marriage, we examine whether a community property agreement is enforceable where extrinsic evidence indicates the parties signed the agreement for estate planning purposes. We also discuss whether the use of community resources for an adult stepchild's college education amounts to a gift of community funds requiring the consent of both spouses.

Fabian and Frances Schweitzer were married in 1973. Mr. Schweitzer came into the marriage with substantial separate assets. During the marriage, Mr. Schweitzer sold all of his separate assets and placed the proceeds in bank accounts containing community funds. Mr. and Mrs. Schweitzer kept separate bank accounts from which they each contributed to community expenses. By the end of the marriage, the Schweitzers had accumulated $1,733,000 in community property.

Mr. and Mrs. Schweitzer signed a standard-form community property agreement in March 1981, just before Mr. Schweitzer was to leave on an international vacation. The couple purchased the agreement at a stationery store and did not consult an attorney. The preamble of the agreement stated it was made "pursuant to the provisions of § 26.16.120RCW, permitting agreements between husband and wife fixing the status and disposition of community property to take effect upon the death of either." Ex. 1. Paragraph I of the agreement purported to convert all separate property to community property, and paragraph II stated that all community property would vest in the survivor upon the death of the other spouse. Mr. and Mrs. Schweitzer's signatures were notarized, but the lines for witness signatures were left blank.

When Mrs. Schweitzer filed for dissolution of the marriage in 1992, she sought to enforce the community property agreement. Mr. Schweitzer argued the parties intended the agreement to take effect only upon death and that they did not intend it to transform separate property into community property immediately, as provided by section I of the agreement. Mr. Schweitzer testified he did not remember reading the document.

Mrs. Schweitzer acknowledged at trial that the agreement was intended to provide for her in case anything happened to Mr. Schweitzer while he was on vacation. However, she also claims both she and Mr. Schweitzer intended section I of the agreement to convert any separate property to community property at the time of signing. Mr. and Mrs. Schweitzer did not alter the way they dealt with their property after signing the agreement.

The trial court found the agreement was actually intended as an estate planning document and that neither of the parties intended the agreement to convert separate property to community property at the time of signing. The trial court also found Mr. Schweitzer had adequately traced the proceeds from the sale of his separate property. The court accordingly awarded Mr. Schweitzer $180,231

in cash as his separate property. The court awarded Mrs. Schweitzer $72,027 in cash, inheritances, bonds, and retirement funds as her separate property.

The trial court also ordered Mrs. Schweitzer to reimburse Mr. Schweitzer $17,663 for his share of community expenses spent on her son Tony's college education and found Mrs. Schweitzer was solely responsible for debts of $36,673 incurred for Tony's educational expenses.

Mrs. Schweitzer appealed. The Court of Appeals held the trial court erred in characterizing any of the property as separate because the community property agreement had converted all separate property to community property at the time of signing. *In re Marriage of Schweitzer*, 81 Wn. App. 589, 594-95, 915 P.2d 575 (1996). The court reasoned the trial court had improperly considered extrinsic evidence of the parties' intent because the evidence contradicted written terms of the agreement. Because the Court of Appeals held the community property agreement was enforceable, it did not rule on whether Mr. Schweitzer had adequately traced his separate property. The court also held the trial court erred in ruling that expenditures and debt incurred for Tony's education were Mrs. Schweitzer's sole responsibility. *Schweitzer*, 81 Wn. App. at 596-98.

Mr. and Mrs. Schweitzer each petitioned this court for review.

## I. Witnessing Requirement

■■ Mr. Schweitzer first argues the community property agreement is void because it was not witnessed. RCW 26.16.120 states that property agreements

> may be made at any time by the husband and wife by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged and certified in the same manner as deeds to real estate are required to be . . . .

When the statute was enacted in 1881, deeds were required to be witnessed. However, this requirement was

eliminated in 1929. RCW 64.04.020. The reason why a community property agreement was required to be witnessed in the same manner as a deed was because the agreement may have conveyed an interest in real property. Given that the witnessing requirement for deeds was repealed 68 years ago, there is no longer any reason to require community property agreements to be witnessed. When interpreting a statute, this court gives effect to the plain meaning of the statutory language. *Higgins v. Stafford*, 123 Wn.2d 160, 165, 866 P.2d 31 (1994). The plain meaning of the statute is that community property agreements, like deeds, need not be witnessed

## II. Standard-Form Community Property Agreements

■ Next, we examine whether a standard-form community property agreement converts separate property to community property at the time of signing. Although there is no statute specifically authorizing the conversion of separate property to community property prior to death, the court in *Volz v. Zang*, 113 Wash. 378, 194 P. 409 (1920) established that spouses may do so by proper agreement or conveyance. The result of a community property agreement " 'is that neither spouse will have any separate property while both live'." *Lyon v. Lyon*, 100 Wn.2d 409, 412, 670 P.2d 272 (1983) (quoting Robert F. Brachtenbach, *Community Property Agreements—Many Questions, Few Answers*, 37 WASH. L. REV. 469, 479 (1962)).

The standard-form community property agreement signed by the Schweitzers is known in Washington as a "three-pronged" community property agreement. Harry M. Cross, *The Community Property Law in Washington* (Revised 1985), 61 WASH. L. REV. 13, 101 (1986) (hereinafter "Cross"). The first prong converts the separate property of each spouse into community property. The second prong provides that all future-acquired property that would otherwise be separate property shall be community property. The third prong vests title of all community property in the survivor upon the death of the other spouse. The Schweitzer agreement states:

[P]ursuant to the provisions of § 26.16.120RCW, permitting agreements between husband and wife fixing the status and disposition of community property to take effect upon the death of either. Witnesseth: That, in consideration of the love and affection that each of us has for each other, and in consideration of the mutual benefits to be derived by each of us, it is hereby agreed, covenanted, and promised as follows:

## I.

That all property of whatsoever nature or description whether real, personal or mixed and wheresoever situated now owned or hereafter acquired by us or either of us, including separate property, shall be considered and is hereby declared to be community property, and each of us hereby conveys and quit claims to the other his or her interest in any separate property he or she now owns or hereafter acquires so as to convert the same to community property.

## II.

That upon the death of either of us, title to all community property as herein defined shall immediately vest in fee simple in the survivor.

Ex. 1.

Three-pronged community property agreements have been recognized to convert separate property to community property at the time they are signed. *Bosone v. Bosone*, 53 Wn. App. 614, 617, 768 P.2d 1022 (1989); *Merriman v. Curl*, 8 Wn. App. 894, 901-02, 509 P.2d 765 (1973). In *In re Marriage of Hadley*, 88 Wn.2d 649, 654, 565 P.2d 790 (1977), we held that an agreement analogous to a community property agreement was binding in dissolution proceedings, even though it was signed in contemplation of death rather than dissolution.

In its oral ruling explaining why it found the agreement was not intended to take effect until death, the trial court reasoned the agreement "was under the statute providing for a disposition of property upon the death of either one of them . . . ." 7 Report of Proceedings at 4. However, the

fact that the standard-form three-pronged community property agreement refers in its preamble to RCW 26.16.120, which authorizes agreements between spouses "to take effect upon the death of either," does not mean the first two prongs of the agreement must wait until death to take effect. The first two prongs, which convert present and future separate property to community property, take effect at the time of signing. *See Bosone*, 53 Wn. App. 614; *see also Lyon*, 100 Wn.2d 409. Indeed, the plain language of section I clearly states, "all property . . . is hereby declared to be community property . . . ."

If Mr. Schweitzer had intended the first two prongs of the agreement to take effect only at death, he could have provided so in the contract. In *In re Estate of Brown*, 29 Wn.2d 20, 24, 185 P.2d 125 (1947), the parties signed an agreement specifically providing that, "upon the death of either of them such property as they now own or may hereafter acquire . . . shall be considered as community property . . . ." Whereas this type of property transfer takes effect only at death, the three-pronged agreement signed by the Schweitzers converts separate property to community property at the time of execution.

### III. Extrinsic Evidence — Generally

We next examine whether the Court of Appeals erred in holding the trial court improperly considered extrinsic evidence of the parties' intent in finding the community property agreement had no effect. *Schweitzer*, 81 Wn. App. at 594-95. The Court of Appeals reasoned that extrinsic evidence cannot be used to delete or contradict the written terms of an agreement. *Schweitzer*, 81 Wn. App. at 595. The court concluded the trial court had "used parol evidence impermissibly to subtract an entire paragraph from the agreement and give it no effect whatsoever." *Schweitzer*, 81 Wn. App. at 595.

The Court of Appeals was correct. In *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990), this

court held extrinsic evidence is generally admissible to ascertain the intent of the parties to a contract. However, we made it clear in *Berg* that this rule, known as the "context rule," authorizes the use of extrinsic evidence only to elucidate the meaning of the words of a contract, and "not for the purpose of showing intention independent of the instrument." *Berg*, 115 Wn.2d at 669 (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944)). We emphasized, "[i]t is the duty of the court to declare the meaning of what is written, and not what was intended to be written." *Berg*, 115 Wn.2d at 669 (quoting *Pollock*, 20 Wn.2d at 348-49). We accordingly held in *Berg* that parol evidence cannot be used to "add[ ] to, modify[ ], or contradict[ ] the terms of a written contract, in the absence of fraud, accident, or mistake." *Berg*, 115 Wn.2d at 669 (quoting *Pollock*, 20 Wn.2d at 348-49); *see also U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 570, 919 P.2d 594 (1996) (" '[u]nilateral or subjective purposes and intentions about the meanings of what is written do not constitute evidence of the parties' intentions'.") (quoting *Lynott v. National Union Fire Ins. Co.*, 123 Wn.2d 678. 684, 871 P.2d 146 (1994)). The Court of Appeals therefore correctly applied the *Berg* doctrine when it held extrinsic evidence of the parties' intent is generally not admissible to contradict the terms of a written agreement.

## IV. Extrinsic Evidence — Mutual Mistake

We next ask whether extrinsic evidence is nonetheless admissible to show the parties made a mutual mistake about the effect of the community property agreement and, if so, whether the evidence shows such a mistake was made by clear, cogent, and convincing evidence.

Although extrinsic evidence is generally not admissible to show intent contrary to the provisions of a written contract, it *is* admissible to show mutual mistake. We stated in *Berg* that parol evidence cannot be used to "add [ ] to, modify[ ], or contradict[ ] the terms of a written

contract, *in the absence of fraud, accident, or mistake."* *Berg,* 115 Wn.2d at 669 (emphasis added) (quoting *Pollock,* 20 Wn.2d at 348-49). The parties neither argued this theory to the Court of Appeals, nor did they discuss it in their petitions for review. However, we requested supplemental briefing from the parties on the mutual mistake theory when we granted review.

■■ "Community property agreements are treated as contracts, and the general rules of contract rescission apply." *Higgins v. Stafford,* 123 Wn.2d 160, 165, 866 P.2d 31 (1994). A court can rescind a contract where both parties are mistaken about a basic assumption underlying the agreement. *Chemical Bank v. WPPSS,* 102 Wn.2d 874, 899, 691 P.2d 524 (1984); RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981). A mistake as to expression is a mistake as to a basic assumption of a contract. RESTATEMENT (SECOND) OF CONTRACTS § 155 cmt. a (1981); *see also Bergstrom v. Olson,* 39 Wn.2d 536, 542, 236 P.2d 1052 (1951) (mutual mistake found where the intention of the parties was identical at the time of agreement, but the written contract failed to express that intention). However, the party asserting mutual mistake must prove by "clear, cogent, and convincing evidence" that both parties were mistaken. *Bergstrom,* 39 Wn.2d at 543.

■ Mr. Schweitzer argues both he and Mrs. Schweitzer mistakenly assumed the agreement would not take effect until one of them died. Mr. Schweitzer's argument relies almost exclusively upon *In re Marriage of Justus,* an unpublished Court of Appeals decision. 82 Wn. App. 1013 (No. 14430-5-III June 11, 1996). Unpublished opinions have no precedential value and cannot be cited as authority under RAP 10.4(h). *State v. Sigman,* 118 Wn.2d 442, 444 n.1, 826 P.2d 144, 24 A.L.R.5th 856 (1992); *see also* RCW 2.06.040 ("Decisions determined not to have precedential value shall not be published.").

■■ Notwithstanding the fact that he relies upon an unpublished case, Mr. Schweitzer's legal argument is theoretically correct. However, the record does not demon-

strate that both parties intended the agreement to operate only at death. If there was any mistake at all, it belonged to Mr. Schweitzer in not reading the community property agreement before signing it. The existence of a unilateral mistake will not void a contract under the theory of mutual mistake. *Beaver v. Estate of Harris*, 67 Wn.2d 621, 628, 409 P.2d 143 (1965). Furthermore, "a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents." *National Bank v. Equity Investors*, 81 Wn.2d 886, 912, 506 P.2d 20 (1973); *Skagit State Bank v. Rasmussen*, 109 Wn.2d 377, 381, 745 P.2d 37 (1987).

 Moreover, Mr. Schweitzer testified in his deposition that he had intended all property to be community property if the marriage had continued. Where there is no mutual mistake, but only an expectation that failed to materialize, a court will not rescind a contract. *Super Valu Stores, Inc. v. Loveless*, 5 Wn. App. 551, 554, 489 P.2d 368 (1971).

Mrs. Schweitzer consistently testified that, although both parties intended the agreement to operate at death, she also intended section I of the agreement to transform separate property into community property immediately. Her intention to transfer all community property to the surviving spouse under section II of the agreement does not preclude a coexisting intention to convert any separate property to community property at the time the agreement was signed. Indeed, this is the essence of the three-pronged community property agreement.

 Appellate review of a trial court's findings of fact is generally limited to determining whether substantial evidence supports the findings. *See Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). However, substantial evidence must be "highly probable" where the standard of proof in the trial court is clear, cogent, and convincing evidence. *In re Detention of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986); *Douglas*

*N.W., Inc. v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 678, 828 P.2d 565 (1992). "Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error." *Slater v. Murphy*, 55 Wn.2d 892, 898, 339 P.2d 457 (1959) (emphasis in original) (quoting 3 JOHN NORTON POMEROY, EQUITY § 859a (5th ed. 1941)).

If the trial court had found clear, cogent, and convincing evidence supported the existence of a mutual mistake, this court would not be able to sustain that finding under the "highly probable" substantial evidence standard. Mr. Schweitzer bears the burden of proving that *both* parties made a mistake; at best, he has proven that *he* made a mistake in not reading the contract. Therefore, the community property agreement will be enforced.

## V. Educational Expenses

We next turn to whether the trial court erred in finding Mrs. Schweitzer is solely responsible for $36,673 in debt incurred for her son Tony's college education and that she must reimburse Mr. Schweitzer $17,663 for his share of community funds spent for this purpose. Mrs. Schweitzer argues Mr. Schweitzer has not met his burden of overcoming the presumption that money borrowed by either spouse during the marriage is presumed to be "for the benefit of the community," citing *In re Marriage of Hurd*, 69 Wn. App. 38, 54-55, 848 P.2d 185 (1993). The Court of Appeals agreed and reversed the trial court on the basis that it did not make a specific finding of fact as to whether or not Mrs. Schweitzer was acting for the benefit of the community when she gave her son financial assistance. *Schweitzer*, 81 Wn. App. at 597.

We have long held a gift of community funds made without the consent of the other spouse confers no benefit on the marital community. *Sun Life Assurance Co. v. Outler*, 172 Wash. 540, 548, 20 P.2d 1110 (1933); *see also In re*

*Estate of McCoy*, 189 Wash. 103, 110, 63 P.2d 522 (1937); *Nimey v. Nimey*, 182 Wash. 194, 200, 45 P.2d 949 (1935). The marital community is "essentially a business concern" that "can have no possible chance to benefit" from the depletion of resources that occurs when funds are given away without the consent of the other spouse. *Outler*, 172 Wash. at 548 (husband's gift to son-in-law without wife's knowledge or consent exceeded husband's power to manage funds).

The Legislature codified this principle in 1972 when it enacted RCW 26.16.030(2). Cross at 84. This statute prohibits either spouse from making a gift of community property "without the express or implied consent of the other." RCW 26.16.030(2); *Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 82, 701 P.2d 1114 (1985); *Bryant v. Bryant*, 125 Wn.2d 113, 117, 882 P.2d 169 (1994).

The statute applies as equally to debt incurred for the purpose of a gift as it does to direct expenditures of community funds. In *Nichols Hills Bank*, 104 Wn.2d at 81-83 (citing RCW 26.16.030(2)), this court held that a loan guaranty signed by the husband on behalf of the couple's son was an impermissible gift of community property because the wife did not consent to the community obligation.

It is clear the use of community resources for Tony's education amounted to a gift of community property. Mr. Schweitzer correctly asserts he had no legal obligation to support Tony after he left home. *See Van Dyke v. Thompson*, 95 Wn.2d 726, 730, 630 P.2d 420 (1981) (noncustodial stepparent not required to support stepchild). Given that there was no community obligation to finance Tony's college education, the expenditures and loans constituted a gift.

Mr. Schweitzer testified at trial that he told Mrs. Schweitzer he opposed the use of community funds for Tony's education. Mrs. Schweitzer concedes that Mr. Schweitzer expressed his opposition to the expenditure; in fact, she claims she avoided discussing the subject with

him because, "he would get very violent." 2 Report of Proceedings at 103.

However, despite his opposition, Mr. Schweitzer signed a document authorizing the withdrawal of funds from Mrs. Schweitzer's retirement account for this purpose. There is therefore a factual dispute regarding whether Mr. Schweitzer consented to the use of community funds for Tony's education. We remand to the trial court for a finding of fact on this issue.

## VI. Attorney Fees

Mrs. Schweitzer has asked this court for attorney fees. Both parties requested attorney fees on appeal. The Court of Appeals denied the requests.

RCW 26.09.140 gives this court the authority to award attorney fees in a dissolution action. However, Mrs. Schweitzer has not given any reason why attorney fees are warranted. Given that Mr. Schweitzer's arguments had merit, and that Mrs. Schweitzer does not claim she lacks the financial resources to pay her attorney fees, Mrs. Schweitzer's request for attorney fees is denied

## VII. Conclusion

We hold the trial court erred in finding the community property agreement was unenforceable. The agreement converted all separate property to community property at the time it was signed. We also hold the use of community resources for an adult stepchild's college education is a gift of community funds requiring the consent of both spouses under RCW 26.16.030(2).

We remand this case for a redistribution of property consistent with this opinion.

DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.