**FILED**
**November 20, 2014**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 32041-3-III |
| SURESH PHILIP, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| JAYA P. PHILIP, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — Dr. Suresh Philip appeals the trial court's division of his and

his ex-wife's assets at the conclusion of their marital dissolution trial. He challenges the

trial court's adjustments to the parties' distributions to account for $251,000 of

community assets that Dr. Philip used to repay his parents for two long-outstanding

separate property loans, a few months before he filed for divorce.

Dr. Philip characterizes the court's adjustment as a right of reimbursement and

argues that it was improperly imposed on the merits and in its amount. The

characterization of the adjustment as a right of reimbursement is challenged by Ms.

Philip. We conclude that however characterized, the adjustment was correctly calculated

to accomplish the trial court's stated objective and that Dr. Philip fails to demonstrate an abuse of the trial court's discretion. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Dr. Suresh Philip and Jaya Philip married in 1990. Dr. Philip came into the marriage with a $92,000 debt to his parents—money he borrowed to help finance his medical education in Nigeria. The loan required repayment at a four percent interest rate, compounded annually.

After getting married, Dr. Philip and Ms. Philip moved to North America. Dr. Philip spent a year in Canada preparing to take the several medical examinations required to practice medicine in the United States or Canada. Ms. Philip lived with her parents in Connecticut during that time frame, traveled to visit him, and provided financial support toward his expenses. Dr. Philip allegedly borrowed another $28,000 from his parents while living in Canada. Ms. Philip claims to have known nothing about either loan before Dr. Philip filed for divorce. Dr. Philip agreed at trial that both loans were his separate property.

In September 2010, Dr. Philip repaid the loans to his parents in their entirety: with interest, he paid them a total of $251,000. He used community funds from the couples' Vanguard investment account. The payment was made without Ms. Philip's knowledge or consent. Two months later, Dr. Philip filed for divorce. The existence of the loans

2

and the fact that he had liquidated a quarter million dollars of community investments to repay them came to light during a divorce mediation.

The dissolution case proceeded to a three-day trial, at the conclusion of which Dr. Philip proposed a fifty-fifty split of the parties' property. While a written summary of the proposed division that Dr. Philip's lawyer handed to the court during closing argument is not in our record,[1] the lawyer argued that following a fifty-fifty split, Dr. Philip should be treated as having received a prior distribution of $115,000 in order to account for his use of community funds to repay the separate loan. Rounded, $115,000 was one-half of the $251,000, less a $10,000 "benefit" to Ms. Philip from his largely parent-financed medical education. 2 Report of Proceedings (RP) at 165-66.

For her part, Ms. Philip questioned whether the $251,000 obligation to Dr. Philip's parents was even bona fide, characterizing it as a "golden parachute" for Dr. Philip, and part of his "divorce planning." 2 RP at 182-83. In addition to seeking an adjustment for the withdrawal from the Vanguard account, she sought a judgment for some $120,000 in arrears on mortgage and child support payments that Dr. Philip had been court-ordered (but failed) to pay, and asked the court to award her continuing spousal maintenance, find

---

[1] Dr. Philip did not designate as clerk's papers any of the trial exhibits or any other documents reflecting individual values of the parties' assets. While most of the values were recapped by the trial court when it announced its oral decision, notably lacking is a definitive figure on the exact value of the Vanguard account at the time of trial.

that the doctor was voluntarily underemployed, and impute $330,000 a year in income to him for purposes of calculating child support.

In announcing its oral decision the day after closing arguments, the court divided most of the parties' assets fairly evenly, but awarded Ms. Philip the entire remaining value of the parties' Vanguard account. Because the parties dispute what the trial court had in mind in its handling of the Vanguard account, we quote all that it had to say on the subject.

> [THE COURT:] Okay, I have to deal with the two-hundred-and-fifty-one-thousand dollar debt, or dollars that were paid to Mr. Philip[']s parents. That debt and I looked at the promissory note, uh, that was a separate property debt he brought into the marriage. . . . The two-hundred-and-fifty-one-thousand dollars is a separate debt for Mr. Philip[ ]. In addition there was a total of approximately a hundred-and-twenty-thousand dollars of unpaid child support, spousal support and mortgages. Those are from the temporary orders. The May, has to you know pay what he can, that I didn't accept that argument. That was an order, he was obligated to pay that. She's entitled to reimbursement for that.

2 RP at 214. Ms. Philip's lawyer at that point asked whether the trial court would enter a $120,000 judgment for the arrears in court ordered payments. The following colloquy and further ruling followed:

> MR. TELQUIST [Dr. Philip's lawyer]: No.
> THE COURT: No.
> MR. TINDELL [Ms. Philip's lawyer]: It goes onto something else[?]
> THE COURT: No, I'm still going. I'm going, what I'm going to do and that by the way is through this May, what I'm going to do is award the Vanguard account to her then she gets no judgment against him and she is

4

compensated for the two-hundred-and-fifty-thousand that was paid of community assets that was paid to his parents.

MR. TELQUIST: Your Honor, did you, isn't one-half of that community, the two-hundred-and-fifty-thousand dollars, I did argue that one-half, it is Doctor Suresh's by community property law. So you're giving her the entire two-fifty?

THE COURT: It's all his separate debt.

MR. TELQUIST: I understand but he used community funds of which he owns one half. I just want to make sure I'm clear.

THE COURT: Okay, yet he took community funds and paid his separate debt and uh, it wasn't, you know the community funds he took and he took em all, they were community funds, they were applied to a separate property debt. So he doesn't get credit for half of it even. He just, and I can understand why he did it. I don't have any problem with him doing it. But uh, but it's a community debt. Okay there's the issue of spousal maintenance. Uh, I'm going to order spousal maintenance of fifteen-hundred dollars through the rest of this year. Okay, that means that she will have had fifteen-hundred spousal maintenance for three years. By that time it will give her an opportunity to sell the house . . . and she's getting considerably more wealth then he's getting in terms of having the ability to pay her own way. So—

MR. TINDELL: Um, okay there's no judgment I understand that.

THE COURT: There will be no judgment against him.

. . . .

MR. TELQUIST: I just, my two forecast [sic] Your Honor, I don't think the analysis is correct, I think he can use his portion of the community to pay his separate debt, one-half he is entitled to.

THE COURT: That's fine.

MR. TELQUIST: But we can address that later.

THE COURT: Okay.

MR. TINDELL: Well regardless of that, the court still has the discretion to make a disproportionate—

THE COURT: Well I've made my decision.

MR. TELQUIST: Right.

THE COURT: And Mr. Telquist is right.

MR. TELQUIST: We'll address that later. Okay.

THE COURT: So we're in recess.

2 RP at 215-18.

When proposed findings, conclusions, and a decree were presented several months later, Dr. Philip requested only one modification to the asset distribution announced in the court's oral ruling: he asked the court to make an adjustment in Dr. Philip's favor to account for $60,000 that had been distributed to Ms. Philip from the Vanguard account during the pendency of the divorce. Dr. Philip was given a $30,000 adjustment in his favor on account of that distribution.

Dr. Philip timely appealed.

## ANALYSIS

Dr. Philip assigns error to the trial court's "granting the community a right of reimbursement" for the $251,000 paid by Dr. Philip to retire his separate debts and to the trial court's "awarding the full community right of reimbursement to Ms. Philip alone." Br. of Appellant at 3 (capitalization omitted). He argues that "[a] right of reimbursement is based on equitable principles" that "does not arise as a matter of right merely because community funds were used to satisfy a separate obligation." *Id.* at 10-11. As equitable grounds cutting against a right of reimbursement, he argues that Dr. Philip had the statutory right to manage and control community funds during the existence of the marital community, that he did not breach a fiduciary duty in repaying the debt, and that Ms. Philip received a reciprocal benefit from Dr. Philip's parents' financing of his medical education. Assuming grounds existed for imposing a right of reimbursement, he

6

argues that the trial court erred in "reimbursing Ms. Philip for the entire $251,000.00." *Id.* at ii (capitalization omitted).

Ms. Philip's overarching response is that the trial court did not impose a right of reimbursement on account of Dr. Philip's repayment of the loan, it simply took the repayment into consideration in making an equitable division of the property. We first address the dispute over the characterization of the adjustment and then turn to the arithmetic dispute over its amount.

*Right of reimbursement or just and equitable distribution*

A variety of circumstances have been identified by Washington decisions in which, as a matter of fairness, one spouse should have a right of reimbursement upon dissolution of the marriage because the other spouse, during marriage, appropriated community assets to his or her separate benefit or subjected them to loss. Like its division of property, a trial court's recognition of a right of reimbursement is reviewed for abuse of discretion. *In re Marriage of Miracle*, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984) (review of right of reimbursement); *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989) (review of distribution of property). But a right of reimbursement is reviewed for its theoretical basis and factual support in ways that a division of property is not, and Dr. Philip argues that we should engage in that more critical review. Ms. Philip points out that the trial court never mentioned a "right of

reimbursement" and asks us to review only whether the trial court's division of assets was just and equitable.

In an action for dissolution, the trial court must distribute the parties' assets and liabilities in a just and equitable manner. RCW 26.09.080; *In re Marriage of Kraft*, 119 Wn.2d 438, 449, 832 P.2d 871 (1992). "The key to an equitable distribution of property is not mathematical preciseness, but fairness." *In re Marriage of Clark*, 13 Wn. App. 805, 810, 538 P.2d 145 (1975). This requires the court to exercise discretion and consider all circumstances surrounding the marriage. *Id.* Ms. Philip argues that her ex-husband's use of community funds to repay his parents was simply one circumstance that could be considered in dividing the parties' assets. Her position finds support in *In re Marriage of White*, 105 Wn. App. 545, 554, 20 P.3d 481 (2001), in which the court pointed out that a right of reimbursement "is rarely important in a dissolution action, because with or without it the court has broad discretion when distributing property and debts; a dissolution court can award property to either spouse in the absence of such a right, or a dissolution court can decline to award property to either spouse in the presence of such a right."

Yet as a general rule, each spouse has an equal right to solely manage the community estate. RCW 26.16.030. In a dissolution action, trial courts do not review and make adjustments for every selfish, improvident, or otherwise objected-to use of community funds during marriage by the husband or the wife. If the joinder of both

8

spouses in a transaction is not required by statute, proof that one spouse refused to consent to another spouse's use of community funds does not support a conclusion that the expenditures were outside the scope of the acting spouse's authority; "[w]here the facts show that husband and wife simply disagree on a matter involving management of community property, the decision of the acting spouse is controlling." *In re Marriage of Schweitzer*, 81 Wn. App. 589, 598, 915 P.2d 575 (1996), *aff'd in part on other grounds*, 132 Wn.2d 318, 937 P.2d 1062 (1997); RCW 26.16.030 (identifying exceptions to a spouse's equal right to solely manage and control community property).

Accordingly, if a specific adjustment made by a trial court in dividing assets is based on its conclusion that one spouse is entitled to be compensated for a use of community assets by the other spouse that—while within the *power* of the acting spouse, was not made in the community interest—then the party burdened with the adjustment has a right to review for abuse of discretion, including reviewing whether the court misunderstood or misapplied the law. The party is entitled to raise that challenge whether the trial court characterized itself as imposing a right of reimbursement or as arriving at a just and equitable distribution.

*The facts and the law support the adjustment*

"A disposition of community funds is within the scope of authority of the acting spouse so long as he or she is acting 'in the community interest.'" *Schweitzer*, 81 Wn. App. at 597 (quoting *Hanley v. Most*, 9 Wn.2d 429, 461, 115 P.2d 933 (1941)). Where

9

he is not, a right of reimbursement can arise. It can arise if one spouse uses community funds to maintain or increase the value of separate property. *Connell v. Francisco*, 127 Wn.2d 339, 351, 898 P.2d 831 (1995) (citing *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 869-70, 855 P.2d 1210 (1993); Harry M. Cross, *Community Property Law in Washington (Revised 1985)*; 61 WASH. L. REV. 13, 61, 67 (1986)). It can also arise if one spouse breaches his or her fiduciary duty. Where a spouse uses community property secretly and without any benefit to the community, he or she breaches a fiduciary duty. *Cf. In re Estate of Madden*, 176 Wash. 51, 54, 28 P.2d 280 (1934) (given the husband's confidential relationship to his wife, "'the burden would be upon [him] to show the fairness of the transaction, the adequacy of the consideration, and the absence of fraud and undue influence'" (quoting *Beals v. Ares*, 25 N.M. 459, 185 P. 780, 794 (1919))).

Dr. Philip's opening brief anticipates being accused of breaching a fiduciary duty. He tries to preempt the argument by characterizing the trial court's oral statement that "'I can understand why he [repaid the loans]. I don't have [any] problem with him doing it'" as a verity, because it was a finding to which Ms. Philip did not assign error. Br. of Appellant at 15 (emphasis omitted) (quoting 2 RP at 216). The court's oral statement was never reduced to a finding, however. It was made following closing arguments in which Dr. Philip *conceded* that a property adjustment should be made in Ms. Philip's favor on account of his use of community funds to pay the loans. It was made after the trial court had already announced Ms. Philip would be "compensated for the two-

10

hundred-and-fifty-thousand that was paid of community assets that was paid to his parents." 2 RP at 215. Nothing in the court's oral ruling detracts from the court's clear legal and factual basis for making the adjustment.

Dr. Philip also argues that even if his undisclosed use of community funds to repay a separate debt might give rise in isolation to a right of reimbursement, it did not support reimbursement here because Ms. Philip received a reciprocal benefit from Dr. Philip's parents' financing of his medical education. Washington cases hold that because a right of reimbursement is an equitable remedy intended to prevent unjust enrichment of the separate owner at the cost of the community, a community that receives a reciprocal benefit will not be entitled to reimbursement. *In re Marriage of Lindemann*, 92 Wn. App. 64, 74, 960 P.2d 966 (1998). Whether to offset a right of reimbursement against a reciprocal benefit is discretionary. *Connell*, 127 Wn.2d at 351 (a court "may" offset the community's right of reimbursement against any reciprocal benefit). The court is not required to recognize a reciprocal benefit as an offset if it determines that an offset is not fair and equitable.

In announcing its decision to make an adjustment, the trial court commented on the fact that Ms. Philip, an electrical engineer, had a bachelor's degree, and while that might have cost less to acquire than her husband's medical degree, "she conceivabl[y] had the same thing[,] but that wasn't a debt she brought into the marriage." 2 RP at 214. The court also heard evidence that Ms. Philip had financially supported Dr. Philip

11

through part of his medical studies. The court did not abuse its discretion in rejecting Dr. Philip's argument that Ms. Philip received a reciprocal benefit.

*The parties' arithmetic dispute*

Finally, Dr. Philip contends that even if the trial court enjoyed the authority to adjust the division of marital assets to account for his application of community funds to a separate debt, it mistakenly doubled the size of the appropriate adjustment by failing to recognize that it is the community, not the complaining spouse, that enjoys the right of reimbursement.

There are different ways to account for the type of adjustment that was required here. Properly applied, all lead to the same result. We will start first with the approach that Dr. Philip insists upon: treat the adjustment as a right of reimbursement that belongs to the community.

As the trial court observed, Dr. Philip applied the full $251,000 to a separate debt. To apply the "reimbursement to the community" approach correctly, then, the court must require that he repay the $251,000 to the community from his separate funds—otherwise, Ms. Philip is shortchanged. We engage in a three-step process: first, divide all the community funds so that Dr. Philip has "separate" assets to repay with; second, cause him to repay the required amount to the community; and third, divide that community asset for a second distribution. The following illustration assumes that the entire value of the parties' assets other than the Vanguard account was $1 million (even though it was

12

more), the entire value of the Vanguard account was $250,000 (even though it was more),[2] and that the court divided the assets fifty-fifty (it did not). Applying Dr. Philip's preferred approach, the adjustment would be made as follows:

|  | Husband | Wife |
| --- | --- | --- |
| All non-Vanguard assets | $500,000 | $500,000 |
| Vanguard account | $125,000 | $125,000 |
| Initial distribution | His: $625,000 | Hers: $625,000 |
| Postdistribution repayment to community from distributed, separate assets | ($250,000) | Not applicable |
| Second distribution, from the community's reimbursement | $125,000 | $125,000 |
| Total assets after both distributions | $625,000 - $250,000 + $125,000 = $500,000 | $625,000 + $125,000 = $750,000 |

---

[2] The Vanguard account allocated to Ms. Philip appears to have been worth considerably more than $250,000. The trial court was clear that Ms. Philip was receiving the account not only to compensate for the loan repayment but also to address the $120,000 arrears in Dr. Philip's court ordered payments. An additional adjustment could be justified by the fact that Dr. Philip took his $250,000 in community assets in September 2010, almost three years before the decree was entered dividing the parties' other assets. And in awarding her only seven more months' spousal maintenance and refusing to impute as much income to Dr. Philip for child support calculation purposes as Ms. Philip had requested, the trial court commented that by year-end, "it will give her an opportunity to sell the house . . . *and she's getting considerably more wealth th[a]n he's getting in terms of having the ability to pay her own way.*" 2 RP at 216 (emphasis added). Dr. Philip does not assign error to the trial court's distribution for any reason other than those that we identify and address.

There was another way of making a reimbursement adjustment that would have recognized that since half of the $251,000 that Dr. Philip withdrew from the Vanguard account was his share of the community property, he should only have to account to Ms. Philip for the half that was hers. But correctly analyzed, a half-size payment belonging entirely to Ms. Philip would have to be paid directly to her, not to the community—otherwise, it would be reduced by half twice. Using the same assumptions, this leads to the same result:

|  | Husband | Wife |
| --- | --- | --- |
| All non-Vanguard assets | $500,000 | $500,000 |
| Vanguard account | $125,000 | $125,000 |
| Initial distribution | His: $625,000 | Hers: $625,000 |
| Postdistribution adjustment | ($125,000) to be paid to W | $125,000 rec'd from H |
| Total assets after adjustment reimbursement | $500,000 | $750,000 |

The trial court preferred to make the desired adjustment (and others) by giving Ms. Philip the Vanguard account as part of the distribution. To get her to the same result, he had to give her at least $250,000 in value from that account. We apply the judge's approach and the same assumptions:

14

|                               | Husband           | Wife              |
| ----------------------------- | ----------------- | ----------------- |
| All non-Vanguard assets       | $500,000          | $500,000          |
| Vanguard account              | $ 0               | $250,000          |
| Total distribution            | His: $500,000     | Hers: $750,000    |
| Post distribution adjustment  | Not applicable    | Not applicable    |
| Total assets after adjustment | $500,000          | $750,000          |

The allocation of at least $250,000 in community assets from the Vanguard account that Ms. Philip received in the property division in 2013 was the proper adjustment. The reason that twice as much must be allocated to Ms. Philip if it is done as part of the property division rather than as a postdivision charge to Dr. Philip is that the property being divided is already half hers; she's being compensated with "their" property. It is only if the adjustment is made *after* the distribution that she has already received "her" half of the community property. At that point, she is entitled to be compensated only for "his" half, with "his" property.

The court did not err.

### Attorney fees

Ms. Philip requests attorney fees pursuant to RAP 18.9(a), characterizing Dr. Philip's appeal is frivolous. "An appeal is frivolous if it presents no debatable issues upon which reasonable minds could differ and is so lacking in merit that there is no

No. 32041-3-III
*In re Marriage of Philip*

possibility of reversal." *Eagle Sys., Inc. v. Emp't Sec. Dep't*, 181 Wn. App. 455, 462, 326 P.3d 764 (2014).

Whether or not the court created a right of reimbursement was a debatable issue. We decline to award fees.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Lawrence-Berrey, J.

16