FILED

NOV 05 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   WW-13-1173-DTaKu |
| | ) | |
| JOHN PETER MELE, | ) | Bk. No.   11-24015-MLB |
| | ) | |
| Debtor. | ) | Adv. No.  12-01271-MLB |
| _____ | ) | |
| | ) | |
| JOHN PETER MELE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| KIMBERLY MELE, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on October 17, 2013
at Seattle, Washington

Filed - November 5, 2013

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc L. Barreca, Bankruptcy Judge, Presiding

---

Appearances:   William F. Malaier, Esq. of Nagler & Malaier,
P.S., argued for Appellant John Peter Mele;
Appellee Kimberly Mele argued pro se.

---

Before:  DUNN, TAYLOR, and KURTZ, Bankruptcy Judges.

DUNN, Bankruptcy Judge:

Chapter 13[1] debtor John Peter Mele ("John")[2] appeals the bankruptcy court's decision excepting from his discharge part of a Washington state court ("State Court") property allocation judgment entered in marital dissolution proceedings with his former wife, Kimberly Mele ("Kimberly"), under § 523(a)(4). We REVERSE.

## I. FACTUAL BACKGROUND

The underlying facts in this appeal are not in dispute,[3] and they reflect a distressing but, unfortunately, all-too-common scenario.

The parties were married for nineteen years. They separated in April 2007 and divorced on April 15, 2009. They have three

---

[1] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil procedure are referred to as "Civil Rules."

[2] Because both of the parties retain the same surname, we refer to them by their first names to identify them. No disrespect is intended by their first name references.

[3] Our summary of the facts relies primarily on the "Facts" set forth in the bankruptcy court's Memorandum Decision ("Memorandum Decision"), entered on March 8, 2013, on the parties' cross-motions for summary judgment in adversary proceeding no. 12-01271-MLB ("Adversary Proceeding"), which in turn relied on the findings and conclusions of the State Court in its oral ruling on March 17, 2009 ("Oral Findings") and in its written opinion ("Opinion") entered on April 15, 2009, in the State Court marital dissolution proceeding between the parties, King County Superior Court Case No. 08-3-01695-5 SEA.

children.

Both parties are trained in the law, but different obstacles leave each of them in circumstances where they do not realize their full professional potential. Kimberly works as a house counsel for Costco, but she has multiple sclerosis, a condition that has resulted in her being on permanent long term disability. At best, she works part time. When Kimberly works part time, her salary is adjusted with her disability compensation.

John worked at a the Ryan Swanson law firm, where he ultimately became a partner. He left the law firm to work for a start-up company, Electric Hendrix. His employment at Electric Hendrix ended shortly after he was disbarred and his new employer was sued successfully for copyright infringement by the family of rock guitarist Jimmy Hendrix.

John apparently has decided that he wishes to return to college to obtain credentials to become a public school teacher and, ultimately, a school administrator. In addition to attending school, he works as a tutor, at seventeen dollars an hour, a job he located from a sign he saw posted on the street. The State Court found that John had not made any attempt to locate current employment consistent with his training and background and found that he was voluntarily underemployed.

After the parties separated, they engaged in what the State Court characterized as a "collaborative process" with the objective of avoiding litigation. It did not work out that way. Early in the marital dissolution proceeding, the State Court entered a temporary order that stated, "Both parties are restrained and enjoined from transferring, removing, encumbering,

concealing or in any way disposing of any property except in the usual course of business or for the necessities of life . . . ."

John had approximately $274,000 in a 401(k) account ("401(k)") from his years of service at Ryan Swanson, which was the marital community's largest asset. During the early stages of the marital dissolution proceeding, he liquidated the 401(k) and spent almost all of the funds in a year's time. In its Oral Findings, the State Court made the following findings, confirmed in the Opinion, regarding the dissipation of the 401(k) funds:

> The evidence is unclear to this court how he [John] spent that money, but it is clear that he did not spend that money to support the community. Without employment except for the tutoring, he has still been able to purchase a 2008 Nissan SUV, a new I-phone, spend hundreds per month on comic books and related expenses.
> At some point early in this process, he unilaterally stopped paying . . . child support and any support for the community.

Oral Findings, at p.6. During this same period, he withdrew $30,000 from community funds, which he spent for his own purposes. Opinion, at p.7.

Following a nine-day trial, the State Court entered a Decree of Dissolution ("Decree") of John and Kimberly's marriage. The Decree included detailed analyses and calculations as to the parties' separate and community property. As the bankruptcy court noted, net community assets totaled $584,147, and the State Court ascribed $250,002 of the net community assets to Kimberly and $334,145 of the net community assets to John. However, consistent with the State Court's Oral Findings, $274,607 of funds "inappropriately withdrawn from the community [401(k)] and spent by [John]" were treated as a "pre-distribution" to him.

-4-

Memorandum Decision, at p.3. Accordingly, the 401(k) funds that John appropriated for his own use constituted approximately 82% of the net community assets ascribed to him.[4] Id.

Kimberly was allocated less of the net community assets ($250,002) than John ($334,145) in the State Court's accounting, but the State Court ultimately determined in the Decree that Kimberly was entitled to 60% of the net community assets. Accordingly, the State Court entered a property settlement judgment ("Property Settlement Judgment") in favor of Kimberly and against John in the amount of $100,486. Memorandum Decision, at p.4.

John filed his chapter 13 petition on December 5, 2011. Kimberly filed a claim in John's bankruptcy case totaling $208,953.06, $135,746.38, including accrued interest, from the unpaid Property Settlement Judgment, and $73,206.20 for attorney's fees awarded against John in the marital dissolution proceeding. Kimberly initiated the Adversary Proceeding on March 30, 2012, seeking to have portions of her claim excepted from John's discharge under §§ 523(a)(2)(A), (a)(4), (a)(5), (a)(6), and (a)(15). On May 11, 2012, Kimberly filed an amended complaint ("Amended Complaint") in the Adversary Proceeding limiting her exception to discharge claims against John to §§ 523(a)(4) and (a)(5).

John filed an objection to Kimberly's claim in his main case, and the bankruptcy court ultimately determined that no

---

[4] $274,607 (401(k) funds spent by John) ÷ $334,145 (net community assets ascribed to John) = .8218, or 82.18%.

portion of Kimberly's claim constituted a "domestic support obligation" for purposes of § 101(14A). On May 24, 2012, the bankruptcy court entered an order disallowing Kimberly's claim as a priority claim under § 507(a)(1)(A), but allowing it as a nonpriority general unsecured claim. This order has not been appealed.

John subsequently moved for summary judgment on both of the remaining claims stated in the Amended Complaint. Kimberly cross-moved for summary judgment on her § 523(a)(4) claim and withdrew the § 523(a)(5) claim based on the bankruptcy court's ruling on John's objection to her claim.

After considering the parties' memoranda and declarations in support of their opposing motions and after hearing oral argument on February 15, 2013, the bankruptcy court granted and denied in part both of the parties' motions. The bankruptcy court concluded that under Washington common law, married spouses "stand in a trust relationship with one another and have fiduciary duties to manage community property for the benefit of the community interest." Memorandum Decision, at p.8. The bankruptcy court further concluded that John had fiduciary obligations to Kimberly when he liquidated and spent the 401(k) funds. The bankruptcy court found that John's "bad acts" in dealing with the 401(k) funds constituted a defalcation for purposes of § 523(a)(4) in that he breached the marital trust relationship with Kimberly and breached his fiduciary duty to the marital community. Memorandum Decision, at p.9.

However, since the $274,607 401(k) funds represented only 82.18% of the net community assets initially ascribed by the

-6-

State Court to John in the Decree, the bankruptcy court found that only 82.18% of the net community assets ascribed to John were "tainted" by his defalcation. Memorandum Decision, at p. 10. Accordingly, the bankruptcy court excepted only 82.18% of the Property Settlement Judgment amount, or $82,579.39, plus interest, from John's chapter 13 discharge under § 523(a)(4). Memorandum Decision at p.11. The bankruptcy court entered an agreed form of order ("Order") granting in part and denying in part the parties' respective cross-motions for summary judgment on March 26, 2013.

John filed a timely Notice of Appeal of the Order on April 9, 2013. Kimberly did not file a cross-appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court apply the appropriate intent standard in concluding that John had committed a "defalcation" to except a portion of John's debt to Kimberly from discharge under § 523(a)(4)?[5]

2. Did the bankruptcy court err in concluding that under Washington common law, the marital relationship is in the nature

---

[5] This issue was not raised by John but was discussed by Kimberly in light of the decision of the Supreme Court in <u>Bullock v. BankChampaign, N.A.</u>, 133 S. Ct. 1754 (2013), issued after the bankruptcy court had issued its Memorandum Decision and entered the Order.

-7-

of an "express" or "technical" trust, making spouses fiduciaries with respect to one another so long as the marital relationship continues for purposes of exception to discharge claims under § 523(a)(4)?[6]

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's legal conclusions, including its interpretation of provisions of the Bankruptcy Code and state law, de novo. Roberts v. Erhard (In re Roberts), 331 B.R. 876, 880 (9th Cir. BAP 2005), aff'd, 241 F. App'x 420 (9th Cir. 2007). Likewise, we review de novo a bankruptcy court's decision to grant in whole or in part summary judgment. Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

## V. DISCUSSION

The record reflects that John's conduct in liquidating and spending the 401(k) funds entirely for himself without any

---

[6] Kimberly raises a further issue in her brief, arguing that John breached fiduciary duties under ERISA to manage the 401(k) funds for the benefit of the marital community. This issue was not raised before, and not considered by, the bankruptcy court. Our review does not indicate that the factual or legal issues implicated by this argument were adequately addressed in the bankruptcy court record. Accordingly, it is not appropriate for this Panel to consider this issue on appeal. See, e.g., Lowery v. Channel Communications, Inc. (In re Cellular 101, Inc.), 539 F.3d 1150, 1156 (9th Cir. 2008).

benefit to the marital community was both irresponsible and reprehensible. The question in this appeal is whether that conduct supports an exception to his chapter 13 discharge consistent with the specific provisions of § 523(a)(4).

1. Generally Applicable Standards in Exception to Discharge Litigation

One of the major policy objectives of the Bankruptcy Code is to provide the "honest but unfortunate" debtor with a fresh start. Bugna v. McArthur (In re Bugna), 33 F.3d 1054, 1059 (9th Cir. 1994), citing Grogan v. Garner, 498 U.S. 279, 286-87 (1991). Accordingly, the discharge provisions of the Bankruptcy Code are interpreted liberally in favor of debtors. In re Bugna, 33 F.3d at 1059. "[E]xceptions to discharge 'should be confined to those plainly expressed.'" Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998), quoting Gleason v. Thaw, 236 U.S. 558, 562 (1915). "In determining whether a particular debt falls within one of the exceptions of section 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor." 4 Collier on Bankruptcy ¶ 523.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013). Generally, a creditor seeking to except a debt from the debtor's discharge bears the burden of proof to establish by a preponderance of the evidence all of the elements of the statutory exception to discharge upon which the creditor relies. See Grogan v. Garner, 498 U.S. 279 (1991).

2. Section 523(a)(4) Elements and Standards

Section 523(a)(4) provides that:

(a) A discharge under section 727 . . . or 1328(b) of

-9-

this title does not discharge an individual debtor from any debt – . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

A debt is excepted from discharge under § 523(a)(4) where "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997), quoting Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir. 1987). "Case law makes clear that the broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the context of exception to a bankruptcy discharge." Utnehmer v. Crull (In re Utnehmer), ___ B.R. ___, ___, 2013 WL 5573198, at *5 (9th Cir. BAP 2013), citing Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986).

The question as to whether the debtor is or was a "fiduciary" for purposes of a claim under § 523(a)(4) is governed by federal law. Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003), citing Lee-Benner v. Gergely (In re Gergely), 110 F.3d 1448, 1450 (9th Cir. 1997). "[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996), citing Ragsdale, 780 F.2d at 796; Davis v. Aetna Accept. Co., 293 U.S. 328, 333 (1934). We consult state law to determine whether the requisite trust relationship exists. In re Cantrell, 329 F.3d at 1125, citing In re Lewis, 97 F.3d at 1185, and Ragsdale, 780 F.2d at

-10-

796.

3. The Intent Standard in Light of the Supreme Court's Bullock Decision

Before we address the issues as to whether the marital relationship under Washington law satisfies the "express" or "technical" trust and fiduciary elements of a § 523(a)(4) exception to discharge claim, we note a change in the law that occurred after the bankruptcy court issued its Memorandum Decision with important implications in this appeal.

In May 2013, the Supreme Court decided Bullock v. BankChampaign, N.A., 133 S. Ct. 1754 (2013). The Bullock decision effectively overruled the line of Ninth Circuit authority culminating in In re Lewis, 97 F.3d at 1186-87, holding that a debtor who failed to account to a creditor to whom he or she owed a fiduciary duty need not have a particular state of mind or bad intent to be subject to an exception to discharge for a "defalcation" under § 523(a)(4). The Supreme Court held that the term "defalcation:"

> includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.

Bullock, 133 S. Ct. at 1757.

In the State Court case, after describing some of John's personal purchases during the year period in which he dissipated the 401(k) funds, which included a 2008 Nissan SUV, a new I-phone, and comic books and related expenses, the State Court found that John did not spend the 401(k) funds to support the

-11-

marital community or to pay child support. The State Court's Oral Findings and written Opinion express implicit disapproval of John's actions in spending the 401(k) funds for his personal use. However, the State Court did not make any specific findings as to John's mental state in dissipating the 401(k) funds. In the Memorandum Decision, the bankruptcy court concluded, consistent with the State Court determinations, that John had inappropriately withdrawn the 401(k) funds from the community and spent them. The bankruptcy court further concluded that John's "bad acts" were the "most significant component" in the State Court's decision to impose the Property Settlement Judgment. The bankruptcy court's ultimate conclusion was that John had committed a defalcation for purposes of § 523(a)(4) that supported the decision to except a portion of the Property Settlement Judgment from his chapter 13 discharge. However, it expressly relied on the In re Lewis defalcation standards in reaching that conclusion.

The bankruptcy court did not have the opportunity to address the enhanced intent standard adopted by the Supreme Court in Bullock in concluding that John had committed a defalcation, resulting in an exception to his discharge under § 523(a)(4) for a portion of the Property Settlement Judgment. Accordingly, at the very least, we are required to vacate the Order and remand this matter for further proceedings to address the Bullock intent standard.

4. Washington Law and the "Express" or "Technical" Trust Requirement

However, we ultimately determine that there is a more

-12-

fundamental problem with the bankruptcy court's analysis in the Memorandum Decision supporting the Order that requires reversal. We conclude that Washington common law does not make marriage an "express" or "technical" trust relationship that necessarily makes married spouses fiduciaries of the marital community for purposes of the exception to discharge provisions of § 523(a)(4).

In determining whether the requisite trust relationship exists for an exception to discharge under § 523(a)(4), we look to state law. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 379 (9th Cir. BAP 2011). The bankruptcy court determined that married spouses stand in a trust relationship to one another without specifying the nature of their relationship as an "express" or "technical" trust.

Under Washington law, the requirements for creating a trust are established by statute. Revised Code of Washington ("RCW") § 11.98.008, entitled "Trust creation – Methods," states:

> A trust may be created by:
>     (1) Transfer of property to another person as trustee during the trustor's lifetime or by will or other disposition taking effect upon the trustor's death;
>     (2) Declaration by the owner of property that the owner holds identifiable property as trustee; or
>     (3) Exercise of a power of appointment in favor of a trustee. (Emphasis added.)

RCW § 11.98.011, entitled "Trust creation – Requirements," states among other provisions that, "A trust is created only if: . . . (b) the trustor indicates an intention to create the trust." (Emphasis added.) Finally, RCW § 11.98.014, entitled "Trust creation – Oral trusts," provides that, "Except as required by a statute other than this title, a trust need not be evidenced by a trust instrument, but the creation of an oral trust and its terms

-13-

may be established only by clear, cogent, and convincing evidence." (Emphasis added.) Existence of a marital relationship in Washington simply does not, of itself, satisfy any of the highlighted statutory requirements for the establishment of an express trust under Washington law. See, e.g., Smith v. Fitch, 25 Wash. 2d 619, 626-27, 171 P.2d 682, 686 (Wash. 1946). Accordingly, we conclude as a matter of law that the marital community of the parties, when they were married spouses, did not constitute an express trust relationship for purposes of § 523(a)(4).

The issue then becomes whether the relationship between married spouses is appropriately characterized as a "technical" trust relationship. As opposed to an "express" trust, created by the covenants of the parties, a "technical" trust is a trust imposed by law. In re Lewis, 97 F.3d at 1185-86; 4 Collier on Bankruptcy ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013). There is Ninth Circuit authority for the proposition that whether a technical trust exists can be determined with reference to a state's statute and/or common law. See, e.g., Lewis v. Short (In re Short), 818 F.2d 693, 695-96 (9th Cir. 1987); Ragsdale, 780 F.2d at 796-97.

Recognizing that there was no case authority directly on point, the bankruptcy court in its Memorandum Decision cited Lam v. Lam (In re Lam), 364 B.R. 379 (Bankr. N.D. Cal. 2007), for the proposition that in California, married spouses are "fiduciaries" for purposes of satisfying the elements of a § 523(a)(4) claim. However, also as recognized by the bankruptcy court, in California, the fiduciary relationship between spouses is

-14-

established by statute.  See California Family Code ("Cal. Fam. Code") §§ 721, 1100(e) and 1101(a).[7]  There are no comparable

---

[7] Cal. Fam. Code § 721 provides:

(a) Subject to subdivision (b), either husband or wife may enter into any transaction with the other, or with any other person, respecting property, which either might if unmarried.

(b) . . . [I]n transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other.  This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other.  This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code, including, but not limited to, the following:

> (1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying.
> (2) Rendering upon request, true and full information of all things affecting any transaction which concerns the community property.  Nothing in this section is intended to impose a duty for either spouse to keep detailed books and records of community property transactions.
> (3) Accounting to the spouse, and holding as a trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse which concerns the community property.

Cal. Fam. Code § 1100(e) provides:

> (e) Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as the assets and liabilities have been divided by the

(continued...)

-15-

provisions under Washington statutes to establish the marital relationship as an express trust or fiduciary relationship.

The bankruptcy court also cited In re Short, 818 F.2d 693 (9th Cir. 1987), for the propositions that the trust relationship established by Washington law for partners in a partnership extended to joint venturers in a real property development joint venture, and "the Washington courts have also expanded the duties of partners beyond those required by the literal language of the state statute." Id. at 695. Accordingly, even though Revised Code of Washington ("RCW") § 26.16.030,[8] which states provisions

---

[7](...continued)
parties or by a court. This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request.

Cal. Fam. Code § 1101(a) further provides:

(a) A spouse has a claim against the other spouse for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate, including, but not limited to, a single transaction or a pattern or series of transactions, which transaction or transactions have caused or will cause a detrimental impact to the claimant spouse's undivided one-half interest in the community estate.

[8] RCW 26.16.030 provides:

Community property defined - Management and control.

(continued...)

-16-

[8](...continued)

Property not acquired or owned, as prescribed in RCW 26.16.010 and 26.16.020, acquired after marriage or after registration of a state registered domestic partnership by either domestic partner or either husband or wife or both, is community property. Either spouse or either domestic partner, acting alone, may manage and control community property, with a like power of disposition as the acting spouse or domestic partner has over his or her separate property, except:

(1) Neither person shall devise or bequeath by will more than one-half of the community property.

(2) Neither person shall give community property without the express or implied consent of the other.

(3) Neither person shall sell, convey, or encumber the community real property without the other spouse or other domestic partner joining in the execution of the deed or other instrument by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument must be acknowledged by both spouses or both domestic partners.

(4) Neither person shall purchase or contract to purchase community real property without the other spouse or other domestic partner joining in the transaction of purchase or in the execution of the contract to purchase.

(5) Neither person shall create a security interest other than a purchase money security interest as defined in RCW 62A.9-107 in, or sell, community household goods, furnishings, or appliances, or a community mobile home unless the other spouse or other domestic partner joins in executing the security agreement or bill of sale, if any.

(6) Neither person shall acquire, purchase, sell, convey, or encumber the assets, including real estate, or the good will of a business where both spouses or both domestic partners participate in its management without the consent of the other: PROVIDED, That where only one spouse or one domestic partner participates in such management the participating spouse or participating

(continued...)

for the management and control of community property during marriage, does not specify that the relationship between spouses is a "trust" or "fiduciary" relationship, the bankruptcy court concluded that Washington courts have "expanded the duties of [spouses] beyond those required by the literal language of the state statute."  Memorandum Decision, at p.7; citing, with modification as noted, In re Short, 818 F.2d at 695.

The bankruptcy court then quoted from various Washington court decisions to the effect that the relationship between married spouses is a relationship of trust imposing fiduciary duties to one another and to the marital community.  See, e.g., In re Marriage of Chumbley, 150 Wash. 2d 1, 9, 74 P.3d 129, 133 (Wash. 2003) ("A spouse is required to act in good faith when managing community property, and a disposition of community funds is within the scope of a spouse's authority to act alone only if he or she acts 'in the community interest.'"), quoting Schweitzer v. Schweitzer, 81 Wash. App. 589, 597, 915 P.2d 575, 579-80 (Wash. Ct. App. 1996); Peters v. Skalman, 27 Wash. App. 247, 251, 617 P.2d 448, 452 (Wash. Ct. App. 1980) (Community property "is a special form of partnership with the spouses not only owing each other the highest fiduciary duties, but also with the husband (and since 1972 the wife) charged with the statutory duty to manage and control community assets for the benefit of the

_____

[8](...continued)
domestic partner may, in the ordinary course of such business, acquire, purchase, sell, convey or encumber the assets, including real estate, or the good will of the business without the consent of the nonparticipating spouse or nonparticipating domestic partner.

-18-

community."); In the Marriage of Hadley, 88 Wash. 2d 649, 665, 565 P.2d 790, 799 (Wash. 1977) (Horowitz, A.J., dissenting) ("The relationship between a husband and wife after marriage is not and is not expected to be an arm's length relationship. That relationship is one of trust and confidence in which the managing husband stands in a fiduciary relationship to his wife."); and In the Marriage of Funk, 2007 WL 4112210, at *4 (Wash. Ct. App. Nov. 20, 2007) (unpublished) ("The management and control of community property belongs to both spouses. RCW 26.16.030. Each spouse stands in a relationship of trust to the other and, even after separation, owes a fiduciary duty to manage and preserve the community assets for the benefit of the community."), citing Peters v. Skalman, 27 Wash. App. at 251, 617 P.2d at 452.

Notably, in none of the cited Washington court authorities was the nature of the marital relationship an issue on appeal. Chumbley and Schweitzer concerned community versus separate property issues. Peters v. Skalman was an adverse possession case. Hadley and Funk presented issues as to appropriate property divisions in the marital dissolution context. Accordingly, the quoted statements from Washington decisions relied on by the bankruptcy court to establish the fiduciary nature of the marital relationship appear to be no more than dicta. In addition, the colorful earlier era decision of the Washington Supreme Court in Marston v. Rue, 92 Wash. 129, 159 P. 111 (Wash. 1916), cited by Kimberly in Appellee's Brief, concerned the husband's suit to recover a motor car from the party who bought it from his wife. The wife had sold it out from under the husband's mistress, who was "flaunting herself

-19-

intolerably" in the vehicle. Id. at 130, 159 P. at 112. The decision has plenty to say about the Marstons' marriage but nothing that could be characterized as dispositive about the nature of the marital relationship.

We recognize the intuitive appeal of the bankruptcy court's conclusion that marriage establishes a trust relationship between spouses that entails the imposition of fiduciary duties. However, in the absence of a Washington statute that characterizes marriage as a trust relationship or that describes the obligations of spouses in managing and disposing of community property as fiduciary in nature, we do not see how the incidental characterizations of the marital relationship and its obligations in Washington common law decisions, upon which the bankruptcy court relied for its conclusion, constitute more than generalized descriptions of fiduciary duty that do not meet the "express" or "technical" trust standard required as an element of a § 523(a)(4) claim. See Ragsdale, 780 F.2d at 796 ("The broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context.").

In addition, Kimberly's assertion of a § 523(a)(4) claim in this case cuts against the scheme of the Bankruptcy Code. If John had sought protection under chapter 7, the Property Settlement Judgment would be excepted from his discharge under § 523(a)(15).[9] In seeking relief under chapter 13, John is

---

[9] Section 523(a)(15) provides that:

(continued...)

-20-

attempting to take advantage of the shrunken "superdischarge" available only in chapter 13[10]. Debts arising from marital property settlement obligations are dischargeable in chapter 13, as they are not in chapter 7. "'[T]he dischargeability of debts in chapter 13 that are not dischargeable in chapter 7 represents a policy judgment that [it] is preferable for debtors to attempt to pay such debts to the best of their abilities over three years rather than for those debtors to have those debts hanging over their heads indefinitely, perhaps for the rest of their lives.'" Pa. Pub. Welfare Dept. v. Davenport, 495 U.S. 552, 563 (1990),

_____

[9](...continued)
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – . . . (15) to a . . . former spouse . . . of the debtor and not of the kind described in paragraph 5 [a domestic support obligation] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . . .

[10] Section 1328(a)(2) in relevant part currently provides that:

> [A]s soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . . except any debt – . . . (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a); . . . .

Prior to enactment of the Bankruptcy Abuse Prevention and Consumer protection Act of 2005, Pub. L. 109-8, April 20, 2005, 119 Stat. 23, the list of exclusions from discharge included in § 1328(a)(2) was much more limited, i.e., "except any debt – (2) of the kind specified in paragraph (5), (8), or (9) of Section 523(a) of this title."

-21-

quoting 5 Collier on Bankruptcy ¶ 1328.01[1][c] (15th ed. 1986).

While the bankruptcy court's decision to except a portion of the Property Settlement Judgment from John's chapter 13 discharge pursuant to § 523(a)(4) as a defalcation of his fiduciary duties to the marital community between him and Kimberly may be defensible as a matter of policy, it appears "to override the balance Congress struck in crafting the appropriate discharge exceptions for Chapter 7 and Chapter 13 debtors." Davenport, 495 U.S. at 563. It is generally the prerogative of Congress rather than individual bankruptcy courts to make such policy choices.

## V. CONCLUSION

Based on the foregoing analysis and discussion of § 523(a)(4) and relevant authorities, we conclude that the bankruptcy court erred as a matter of law in determining that Washington common law established the marital relationship as in the nature of an express or technical trust, imposing fiduciary duties on spouses to manage community property for the benefit of the marital community during marriage, for purposes of establishing the elements of a § 523(a)(4) claim. Accordingly, we REVERSE.

-22-