NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>YORAM TALASAZAN,<br>　　　　　　Debtor. | BAP No.  CC-21-1271-GLS<br><br>Bk. No. 1:16-bk-11671-MT |
| YORAM TALASAZAN,<br>　　　　　　Appellant,<br>v.<br>MOEIR MOUSSIGHI; HANRIT<br>MOUSSIGHI; MOEIR & HANRIT<br>MOUSSIGHI dba ROLL TEX,<br>　　　　　　Appellees. | Adv. No. 1:16-ap-01119-MT<br><br>**MEMORANDUM*** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Maureen A. Tighe, Bankruptcy Judge, Presiding

Before: GAN, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Appellant and chapter 7[1] debtor Yoram Talasazan ("Debtor") and

Appellees Moeir and Hanrit Moussighi, dba Roll Tex (collectively

"Moussighi") were partners in a business venture to purchase "fire sales"

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

of garments for resale to retailers. Moussighi contributed capital, and Debtor located, purchased, and resold the merchandise. After selling the garments, Debtor was to pay 40% of the profits to Moussighi. Debtor did not pay Moussighi his share of the profits and, after years of litigation, Moussighi obtained a judgment against Debtor in state court (the "State Court Judgment").

Debtor filed a chapter 7 petition, and Moussighi filed an adversary proceeding to deny Debtor's discharge under § 727 and except the debt from discharge under § 523. After trial, the bankruptcy court entered judgment, denying the § 727 claims, but finding the debt to Moussighi nondischargeable under § 523(a)(4) for defalcation while acting in a fiduciary capacity. In determining that Debtor committed defalcation, the bankruptcy court gave preclusive effect to the State Court Judgment, and it relied on both the State Court Judgment and testimony presented in the bankruptcy court to find that Debtor had the requisite culpability under *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013).

We find no abuse of discretion in the bankruptcy court's decision to admit the State Court Judgment or in its application of issue preclusion to establish the predicate facts for defalcation. Debtor does not demonstrate clear error by the court in determining, based on the evidence at trial, that he acted with a culpable state of mind in committing those acts, or in its finding that damages were proximately caused by the defalcation. Accordingly, we AFFIRM.

## FACTS[2]

### A.    Prepetition Events

Moussighi and Debtor began their business relationship in 2003. Between 2007 and 2010, they were involved in approximately 40 transactions under which Debtor located and purchased garments for resale using capital contributed by Moussighi. Debtor stored the merchandise at a warehouse of a business he owned, Ban-V, Inc. ("Ban-V"), and arranged sales to retail customers. Pursuant to their agreement, Moussighi was to receive 40% of the profits, and Debtor and Ban-V would receive the remaining 60%. Some of the transactions also involved David Lahiji, the cousin of Debtor's wife, who was also in the business of liquidating close-out merchandise. Moussighi contended that Debtor did not allocate profits as required by the agreement. Debtor claimed that he did not profit on the resale of merchandise, and Moussighi was obligated to share in the losses and expenses of those unprofitable deals.

In September 2011, Moussighi filed suit in the Los Angeles Superior Court against Debtor, Lahiji, and others, alleging: (1) breach of contract, (2) open book account, (3) account stated, (4) unjust enrichment, (5) fraud, (6) conspiracy to defraud, (7) negligent misrepresentation, (8) conversion, (9) breach of implied covenant of good faith and fair dealing, (10) assault,

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

(11) battery, (12) intentional infliction of emotional distress, and (13) money due on dishonored checks.

Debtor filed a cross-complaint against Moussighi, and Lahiji filed a cross-complaint against Debtor and Moussighi. After trial, the state court entered judgment against Debtor and in favor of Moussighi on his claims for breach of contract, open book account, account stated, unjust enrichment, negligent misrepresentation, and dishonored checks. The state court denied Lahiji and Debtor relief on their cross-complaints.

On August 5, 2014, the state court entered final judgment in the total amount of $1,269,497.50, consisting of $779,841 in damages, $16,595.21 in costs, and $473,061.29 in prejudgment interest. The damages were based on documents created by Debtor which showed that he sold merchandise but did not share proceeds with Moussighi or Lahiji, and on Moussighi's records which reflected the amounts due under the agreements.

The state court described the business relationship and the specific transactions in its statement of decision ("SOD"). It found that Debtor and Moussighi had a contract, known as the "Y-Agreement," which Debtor breached by failing to pay Moussighi his share of sale proceeds and by cutting off Moussighi's access to Ban-V's warehouse and key documents, falsifying documents, and repeatedly issuing bad checks from an account which he knew had insufficient funds. The state court also determined that Debtor, Moussighi, and Lahiji had a contract, known as the "YD-Agreement" or "Greenwest Deal," which Debtor also breached by failing to

4

share sale proceeds. The court found that, while the merchandise was in Debtor's possession and under his exclusive control, Debtor lost or sold 544,000 pieces. Debtor presented false invoices to Moussighi and never paid him his share of the proceeds. The state court further determined that Debtor made several false statements of material fact which constituted negligent misrepresentations.[3]

## B.    The Bankruptcy and Adversary Proceeding

In June 2016, Debtor filed a chapter 7 petition. Moussighi filed an adversary complaint seeking to hold the judgment debt nondischargeable under § 523(a)(2)(A), (a)(2)(B), and (a)(4).[4] After Debtor filed a motion to dismiss, the bankruptcy court dismissed the § 523(a)(2)(B) claim and ruled that the § 523(a)(4) action could proceed solely on allegations of fraud or defalcation while acting in a fiduciary capacity.

Moussighi and Debtor then filed cross-motions for summary judgment. Although they disagreed about the meaning of the state court's ruling, both parties argued that issue preclusion was applicable, and each party filed a request for judicial notice of the SOD and the State Court Judgment.

---

[3] The state court additionally found Debtor and his wife, Noga Talasazan, not credible based on their evasive and contradictory testimony and Debtor's failure to adequately explain evidence presented against him.

[4] Moussighi also sought to deny Debtor's discharge under § 727. After trial, the bankruptcy court denied the § 727 claims, and that portion of the ruling is not at issue in this appeal.

Moussighi argued that the findings in the SOD established Debtor's fraud. Conversely, Debtor argued that the state court did not grant relief on the fraud claim and he was therefore entitled to summary judgment on both the § 523(a)(2)(A) claim and the § 523(a)(4) claim for fraud while acting in a fiduciary capacity. Debtor also argued that defalcation was not at issue in the state court action and Moussighi could not establish Debtor's culpable state of mind which was necessary to prove defalcation under § 523(a)(4).

Notwithstanding the factual findings of the state court, Debtor claimed that genuine issues of material fact existed about whether he misappropriated merchandise or proceeds. He supported his motion with a declaration from Lahiji which stated, contrary to his testimony in state court, that Debtor did not have custody or control over much of the merchandise at issue and that Moussighi took and sold the merchandise that Debtor did possess.

On the § 523(a)(2)(A) claim, the bankruptcy court denied Moussighi's motion and granted summary judgment in favor of Debtor. Applying issue preclusion, the bankruptcy court held that because the state court found in favor of Debtor on the state law fraud claim, which was identical to fraud for nondischargeability purposes under § 523(a)(2)(A), Moussighi was precluded from relitigating the issue of Debtor's fraud.

Regarding the § 523(a)(4) claim, the bankruptcy court denied Moussighi's motion because he failed to include any argument or cite any

law regarding fraud or defalcation while acting in a fiduciary capacity. The bankruptcy court also denied Debtor's motion for summary judgment on the § 523(a)(4) claim because, although the state court decided the issue of fraud, defalcation includes conduct that does not meet the standard of fraud. Consequently, the only nondischargeability issue remaining for trial was whether the debt was obtained by Debtor's defalcation while acting in a fiduciary capacity.

## C.     The Trial and the Court's Ruling

The bankruptcy court commenced a five-day trial in September 2019. Prior to trial, Debtor filed a motion in limine seeking to exclude all documents pertaining to the state court action. He argued that the State Court Judgment was obtained by fraud upon the court and should be set aside because Lahiji gave false testimony in state court. Debtor claimed that Moussighi promised he would not pursue Lahiji for any money he owed if Lahiji would fully cooperate with his attorneys. Debtor suggested that Moussighi's attorneys perpetrated fraud by directing Lahiji to make false statements in state court, including that Debtor had misappropriated or stolen merchandise. Debtor supported his motion with a declaration from Lahiji which stated that he was coerced by Moussighi into providing much of the damaging testimony in the state court action.

The bankruptcy court denied Debtor's motion in limine and admitted the state court documents. The court reasoned that the issue was raised too late as a matter of California issue preclusion law and further determined

that "there's no convincing evidence that an officer of the court was involved in perjury, other than a vague statement by a relative of the [Debtor], who admits to being a perjurer for financial gain."

The court found no reason to believe Lahiji's new testimony since he had previously perjured himself. It noted that the state court relied on documentary evidence and Debtor's testimony in rendering its decision and did not appear to rely much on Lahiji's testimony. The bankruptcy court dismissed the allegation that Lahiji was coerced and instead concluded that he apparently decided he would do better currying favor with one side over the other and later changed his mind. The parties in the state court action had ample opportunity to cross-examine Lahiji and the state court had an opportunity to evaluate his credibility.

At trial, Debtor presented expert testimony of Dr. Robert Manning Wilford V, a licensed clinical psychologist, who opined that due to Debtor's reading disorder, combined-type ADHD, social anxiety disorder, dyslexia, and dysgraphia, Debtor was unable to recall events or put them in chronological order. Dr. Wilford believed that Debtor should not write paper records and he would have difficulty answering questions and forming agreements. Dr. Wilford also opined that testifying in court would be difficult for Debtor, that he would look like a "whack job," appear inconsistent, and "probably look like he's fibbing a little bit because he's trying to cover [for his illness]."

In testifying about the business transactions with Moussighi and Lahiji, Debtor largely contradicted the factual findings of the state court. Debtor testified that he paid Moussighi his share of the proceeds on the first 38 deals and, regarding the "Greenwest Deal," Debtor stated that Lahiji and Moussighi took possession of the merchandise. He claimed that Moussighi always had access to Ban-V's warehouse and records, and he was there almost every day. Debtor disputed the state court's finding that 544,000 pieces of merchandise disappeared or were sold by Debtor without payment to Moussighi. Debtor claimed that he always intended to pay Moussighi and just needed more time.

Following trial, the bankruptcy court entered written findings of fact and conclusions of law, holding the judgment debt nondischargeable for defalcation while acting in a fiduciary capacity under § 523(a)(4).

The bankruptcy court applied issue preclusion and determined that whether Debtor committed the actions necessary for defalcation was litigated and decided by the state court. The bankruptcy court relied on state court findings, as well as testimony and documents presented in the bankruptcy court, to determine that Debtor had a culpable state of mind under the holding of *Bullock*.

The bankruptcy court reasoned that the damages awarded by the state court resulted from transactions which were all part of the joint venture, and those damages were part of the course of conduct described by the court as a breach of fiduciary duty. It entered a nondischargeable

9

judgment in favor of Moussighi for $779,841 plus interest. Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err by admitting the SOD and State Court Judgment and by giving them preclusive effect?

Did the bankruptcy court err by finding the judgment debt nondischargeable for defalcation while acting in a fiduciary capacity under § 523(a)(4)?

## STANDARDS OF REVIEW

We review the bankruptcy court's evidentiary rulings for abuse of discretion. *Am. Express Travel Related Servs. Co. v. Vinhnee (In re Vinhnee)*, 336 B.R. 437, 442 (9th Cir. BAP 2005). We do not disturb those rulings absent prejudice and a timely objection. *Price v. Kramer*, 200 F.3d 1237, 1252 & n.17 (9th Cir. 2002).

We review de novo the bankruptcy court's determination that issue preclusion was available. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). Under de novo review, we give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

10

"If issue preclusion was available, we then review the bankruptcy court's application of issue preclusion for an abuse of discretion." *In re Plyam*, 530 B.R. at 461. A bankruptcy court abuses its discretion if it bases a decision on an incorrect legal rule, or if its application of the law was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 & n.21 (9th Cir.2009) (en banc).

The ultimate question of whether a claim is nondischargeable is a mixed question of law and fact, which we review de novo. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). However, when the appellant challenges the bankruptcy court's factual findings, we review those findings for clear error. *Id.* Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We "give singular deference to a trial court's judgments about the credibility of witnesses. That is proper . . . because the various cues that bear so heavily on the listener's understanding of and belief in what is said are lost on an appellate court later sifting through a paper record." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017) (cleaned up). "We may affirm on any

ground fairly supported by the record." *Jimenez v. ARCPE 1, LLP (In re Jimenez)*, 613 B.R. 537, 543 (9th Cir. BAP 2020) (citation omitted).

## DISCUSSION

On appeal, Debtor argues that the bankruptcy court erred by admitting the State Court Judgment and SOD and giving them preclusive effect. He also argues that the court erred by finding that Debtor committed defalcation with the requisite culpable state of mind. He suggests the bankruptcy court did not appropriately consider expert testimony and it erred by determining that damages awarded by the state court were proximately caused by the defalcation.

**A.     The Bankruptcy Court Did Not Abuse Its Discretion by Admitting the State Court Judgment and SOD.**

Debtor argues that the bankruptcy court should have excluded the State Court Judgment and SOD because Lahiji was coerced into providing false testimony by Moussighi and his attorneys. We find no abuse of discretion.

We agree with the bankruptcy court that a motion to set aside the State Court Judgment for fraud on the court should have been timely made in the state court action and, for purposes of issue preclusion, the State Court Judgment was final. Debtor was aware of the alleged fraud at the time of his motion for summary judgment but did not raise the issue. Instead, he filed a request for judicial notice asking the court to consider the SOD and State Court Judgment for their preclusive effect.

12

In arguing the motion in limine, Debtor's counsel stated: "we only learned about this in preparation for the motion for summary judgment . . . . We didn't bring the issue up because we were hopeful that we would be prevailing on summary judgment." Hr'g Tr. (Sept. 12, 2019) at 15:1-8. Debtor does not explain, nor do we discern, how he was prejudiced by admission of the State Court Judgment and SOD for purposes of issue preclusion, when he asked the court to consider the documents for their preclusive effect after discovering the alleged fraud on the state court.

We also agree with the bankruptcy court that Debtor did not sufficiently demonstrate that an officer of the court was involved in perjury. The only evidence of fraud on the court was Lahiji's own vague statement, which the bankruptcy court found not credible. We find no error in the court's evaluation of Lahiji's declaration and no abuse of discretion in its decision to admit the State Court Judgment and SOD for purposes of issue preclusion.

B.    **Legal Standards Governing Issue Preclusion**

The doctrine of issue preclusion applies to actions to except debts from discharge under § 523(a). *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). In applying issue preclusion, the bankruptcy court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The party asserting issue preclusion bears the burden of establishing the threshold

13

elements. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001).

To determine the issue preclusive effect of the California judgment, we apply California's issue preclusion law, which requires:

> (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.

*In re Plyam*, 530 B.R. at 462 (citing *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990)). The court must additionally assess "whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy." *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (9th Cir. BAP 2006) (citing *Lucido*, 51 Cal. 3d at 341-43), *aff'd*, 506 F.3d 956 (9th Cir. 2007).

Debtor does not dispute that the State Court Judgment was a final judgment on the merits between the same parties. He argues that whether his conduct constituted defalcation and whether he had the requisite mental state were not at issue in the state court action and were neither "actually litigated" nor "necessarily decided."

14

**C.** **The Bankruptcy Court Did Not Abuse Its Discretion by Giving the State Court Judgment Preclusive Effect.**

To determine whether the bankruptcy court properly applied issue preclusion, we compare the elements required to establish liability in the state court action with the elements required for nondischargeability based on defalcation under § 523(a)(4).

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity . . . ."[5] Whether a debtor is a fiduciary and whether his actions constitute defalcation are governed by federal law. *Mele v. Mele (In re Mele)*, 501 B.R. 357, 363 (9th Cir. BAP 2013). "We consult state law to determine whether the requisite trust relationship exists." *Id.* (citing *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003)).

To establish liability under this provision, a creditor must prove: (1) there is an express trust; (2) the debt is created by fraud or defalcation; and (3) the debtor acted as a fiduciary to the creditor when the debt was created. *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997), *abrogated on other grounds by Bullock*, 569 U.S. at 274. Debtor does not dispute the existence of an express trust or that he was a fiduciary at the time the debt was created.[6] Thus, the first and third elements are satisfied.

---

[5] Section 523(a)(4) also excepts from discharge debts for embezzlement or larceny. The bankruptcy court dismissed Moussighi's claims for embezzlement or larceny, and our review in this appeal is limited to defalcation.

[6] Debtor admits that his contractual agreements with Moussighi formed a joint

"Defalcation" is the misappropriation of trust funds or money held in any fiduciary capacity. *In re Lewis*, 97 F.3d at 1186. Defalcation also includes a fiduciary's failure to account for money or property that has been entrusted to him. *Pemstein v. Pemstein (In re Pemstein)*, 492 B.R. 274, 282 (9th Cir. BAP 2013); *see also Bullock*, 569 U.S. at 275 ("'Defalcation' . . . can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity."). Once a creditor has demonstrated that the debtor is a fiduciary and has been entrusted with funds, the burden shifts to the debtor to fully account for all funds received. *In re Niles*, 106 F.3d at 1462.

Additionally, defalcation requires a "culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 569 U.S. at 269. The bankruptcy court must find that the debtor's conduct involved: (1) bad faith, moral turpitude, or other immoral conduct; or (2) an intentional wrong. *Id.* at 273. "We include as intentional not only conduct that the fiduciary knows is improper but . . . [w]here actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and

---

venture. Under California law, parties to a joint venture have the same fiduciary responsibilities as partners and are fiduciaries for purposes of § 523(a)(4). *Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268, 275 (9th Cir. BAP 1990) (citing *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir. 1987); *Ragsdale v. Haller*, 780 F.2d 794, 796-97 (9th Cir. 1986)).

unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* at 273-74.

The state court action did not include a claim for defalcation, but use of the term "defalcation" is not required; "it is necessary only that the prior decision establish facts necessary to except the debt from discharge under section 523." *In re Pemstein*, 492 B.R. at 283 n.19 (cleaned up); *see also Lucido*, 51 Cal. 3d at 342 ("The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same."). "An issue is actually litigated when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Wabakken v. Cal. Dep't of Corr. & Rehab.*, 801 F.3d 1143, 1148 (9th Cir. 2015) (cleaned up). The "necessarily decided" element requires that the issue is not "'entirely unnecessary' to the judgment in the initial proceeding." *Samara v. Matar*, 5 Cal. 5th 322, 327 (2018) (quoting *Lucido*, 51 Cal. 3d at 342).

The state court determined that Debtor breached the contracts by failing to pay Moussighi his share of proceeds from the sales of merchandise. And it determined that while merchandise was in Debtor's possession and under his control, 544,000 pieces disappeared or were sold by Debtor without payment to Moussighi. These factual findings were necessary to the state court's ruling on the breach of contract claim and were "actually litigated." The facts required to prove the breach of contract action—that Debtor sold merchandise but failed to pay Moussighi under

17

the contracts—are identical to the facts required to prove defalcation—that Debtor either misappropriated or failed to account for the inventory or proceeds. Accordingly, the bankruptcy court properly applied issue preclusion to determine that Debtor committed the acts necessary to a claim for defalcation.

But we agree with Debtor that issue preclusion was not available to establish his culpable mental state. The state court made many factual findings which demonstrate Debtor's recklessness, if not actual intent, but those findings were entirely unnecessary to the causes of action which the state court decided in favor of Moussighi.

Negligent misrepresentation requires that the defendant have no reasonable grounds for believing his misrepresentation to be true; it does not require a culpability standard equivalent to actual intent or recklessness.[7] The requirement that a defendant have no reasonable ground for believing the misrepresentation is an objective standard akin to negligence. It is not equivalent to the subjective scienter requirement for

---

[7] The elements of a negligent misrepresentation claim under California law are: (1) the misrepresentation of a material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance; (4) justifiable reliance on the misrepresentation; and (5) damages. *Small v. Fritz Cos.*, 30 Cal. 4th 167, 174 (2003); *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). "The tort of negligent misrepresentation does not require scienter or intent to defraud." *Small*, 30 Cal. 4th at 173. "In contrast to fraud, negligent misrepresentation does not require knowledge of falsity. A defendant who makes false statements 'honestly believing that they are true, but without reasonable ground for such belief, . . . may be liable for negligent misrepresentation.'" *Apollo Cap. Fund LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) (quoting *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407 (1992)).

defalcation which requires "knowledge of" or "gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *See Apollo Cap. Fund LLC*, 158 Cal. App. 4th at 240-43 (discussing the difference between fraud and negligent misrepresentation); *see also Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012) ("an allegation of negligent misrepresentation suggests only that the defendant failed to use *reasonable* care—an objective standard"). None of the other claims decided by the state court in Moussighi's favor depend on Debtor's state of mind.

Because the State Court Judgment did not necessarily decide the issue of Debtor's culpable state of mind, the bankruptcy court was required to make its own factual finding. While the court's finding of culpability improperly relied in part on the State Court Judgment, it was also based on the evidence adduced at trial.

**D.     The Bankruptcy Court Did Not Clearly Err by Finding that Debtor Had a Culpable Mental State.**

In the nondischargeability trial, the bankruptcy court considered additional evidence related to Debtor's intent and knowledge. After considering Debtor's testimony and his explanations of the documentary evidence, the court concluded that Debtor was reckless and did not take his fiduciary responsibilities seriously. The court found Debtor's testimony to be contradictory about whether he intended to pay Moussighi, and further reasoned that, though Debtor was clearly distressed at the rupture of his relationship with Moussighi, "an honest belief that he could pay it back

19

eventually and a sincere desire to pay the funds back is not the same as the recklessness and dishonesty he showed at the time he took the money and operated the business."

The court weighed the documentary evidence and testimony from Debtor's employee, Soraya Khalilipour, which confirmed that Debtor had control over the business and that his accounting records were "loose." The court determined that most of Debtor's testimony about his business practices and dealings with Moussighi contradicted the SOD. Instead of providing evidence that he did not consciously disregard a substantial and unjustifiable risk that his conduct would violate his fiduciary duties, Debtor blamed Moussighi and others for the loss of inventory—defenses considered and rejected by the state court.

Debtor does not directly dispute the court's finding of culpability and instead argues that it failed to properly consider the expert testimony of Dr. Wilford. The bankruptcy court clearly considered the expert opinion but found it: (1) unpersuasive and improper as it related to the state court action; (2) exaggerated with respect to Debtor's testimony at trial; and (3) presented primarily to impeach the state court's findings. The bankruptcy court cited specific examples of Debtor's ability to recall and smoothly deliver testimony on direct examination while exhibiting an acute lack of recall when it came to remembering adverse details. And like the state court, the bankruptcy court found Debtor not credible.

The court's finding that Debtor acted with the requisite culpability is supported by evidence in the record, and Debtor has not demonstrated clear error.

**E. The Bankruptcy Court did not Err by Determining the Damages Awarded Under the State Court Judgment to be Nondischargeable.**

The bankruptcy court limited its nondischargeable judgment to amounts awarded by the state court for breach of contract. It determined that the damages awarded for Debtor's contractual breaches resulted from the same conduct which the court described as a breach of fiduciary duty.

Debtor argues that a breach of fiduciary duty was not decided by the state court and damages for breach of contract are not the same as those proximately caused by defalcation. In this case, we disagree.

The contracts which Debtor breached were part of a continuing joint venture. As discussed above, the conduct which constituted Debtor's breach of contract also constituted the factual basis for defalcation while acting in a fiduciary capacity. Thus, the damages awarded by the state court for breach of contract were proximately caused by Debtor's defalcation, and the bankruptcy court did not err by holding the debt nondischargeable.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's judgment.